# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
## November 17, 2011 Session

## EDITH WENCZL SIMPKINS v. OTTO KENT SIMPKINS

**Appeal from the Circuit Court for Davidson County**
**No. 07D1205     Carol Soloman, Judge**

**No. M2010-02550-COA-R3-CV - Filed February 27, 2012**

Husband appeals his conviction of fourteen counts of criminal contempt for violations of the Marital Dissolution Agreement and the imposition of fourteen consecutive ten-day sentences for a total of 140 days in jail. Husband also appeals an award of attorney's fees to Wife. We affirm the award of attorney's fees to Wife and the finding that Husband was guilty of fourteen separate counts of criminal contempt; however, we find the imposition of the maximum sentence was excessive and employ our authority under *Thigpen v. Thigpen*, 874 S.W.2d 51, 54 (Tenn. Ct. App. 1993) to modify the sentence. Applying contempt sentencing principles found in *In re Sneed*, 302 S.W.3d 825 (Tenn. 2010) and sentencing considerations under Tennessee Code Annotated § 40-35-103 and 115(b), the sentences for twelve of the counts are reduced to four (4) days each, which will run consecutive to each other, the sentences for the two remaining counts are reduced to one (1) day each, which will run concurrent to each other but consecutive to the other twelve counts for an effective sentence of forty-nine (49) days. We also award Wife her reasonable attorney's fees on appeal pursuant to the enforcement provision contained in the parties' marital dissolution agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Modified in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellant, Otto Kent Simpkins.

Rose Palermo and Elizabeth G. Tannenbaum, Nashville, Tennessee, for the appellee, Edith Wenczl Simpkins.

## OPINION

Otto Kent Simpkins ("Husband") and Edith Wenczl Simpkins ("Wife") were divorced by a Final Decree entered on June 1, 2009. On May 6, 2009, prior to the entry of the Final Decree, the parties entered into a Marital Dissolution Agreement, which was approved by the trial court and incorporated into the Final Decree on June 1, 2009.

Pursuant to a pendente lite agreed order in November 2007, the marital residence located in Nashville, Tennessee, was listed for sale for 2.5 million dollars.[1] The residence had not been sold when the Final Decree was entered in June of 2009.

Under the terms of the Martial Dissolution Agreement ("MDA"), Husband was granted the exclusive right to reside in the marital residence until the sale of the property, provided that Husband keep the residence "in good condition in order to show properly and maximize the price to be obtained from a buyer." The MDA further provided that Husband was solely responsible for paying the interest and principal payments on the home equity line of credit, which was a first mortgage on the marital residence, and he was solely responsible for the taxes, insurance, utilities, and maintenance and repair costs. The MDA also provided that neither party was to make any advances against the equity line of credit after May 5, 2009, the date it was signed by the parties. When the marital residence was sold, Wife was to receive from the proceeds at closing $330,612.00 as a share of the marital property division and an additional $75,000 was to be remitted to Wife's attorneys for their fees.

The MDA also required Husband to pay Wife alimony in futuro of $5,000 per month, which was to be secured by a $5,000 per month life insurance policy on Husband's life, and Husband was to pay Wife's health insurance premiums for three years.[2] Further, the MDA authorized Wife to sell the parties' slip at the yacht club marina, subject to consulting with Husband about the sale price, with the proceeds to be divided equally between the parties. The MDA also contained an enforcement provision stating that if either party petitioned the court to enforce the provisions of the MDA, the party at fault would be required to pay attorney's fees, expenses and court costs.

On April 23, 2010, Wife filed a Motion to Enforce the Final Decree. In her motion, Wife stated that Husband had violated the MDA by withdrawing advances on the equity line of credit, failing to pay the property taxes on the marital residence, and failing to maintain

---

[1] A subsequent agreed order entered in February 2008, stated that Husband would "prepare [the residence] for sale and [Husband could use it] for residential purposes during the period he is in Nashville."

[2] The health insurance policy was to be comparable to Wife's policy at the time of the divorce.

and repair the residence while it remained listed for sale. Wife further stated that Husband's acts and omissions were hindering the sale of the marital residence, evidenced by the fact that only one offer for a price far below the listed value had been received.

Following a hearing on May 14, 2010, the trial court ordered Husband to appear before the court on May 26, 2010, to show the status of the sale on the marital residence, to prove that Husband had reduced the equity line of credit, and to prove that he had paid the outstanding real estate taxes.

At the May 26, 2010 hearing, the court was informed that the contract for sale of the marital residence had fallen through and that Husband had not repaid the $123,000 he had borrowed against the equity line of credit in violation of the MDA. In the order that followed the hearing, the trial court ordered Husband to refund the withdrawals against the equity line of credit and admonished Husband regarding his repeated violations of the MDA and the Final Decree of Divorce.

On the same day as the hearing, Wife filed a Petition for Criminal Contempt alleging that Husband violated the MDA and Final Divorce Decree by repeatedly withdrawing funds against the equity line of credit, failing to make the required payments on the equity line of credit, failing to pay the real estate taxes, failing to maintain the marital residence, failing to list the marital residence for sale, refusing to pay Wife's pendente lite support payments, selling the yacht slip without Wife's consent, failing to pay Wife's health insurance premiums, and failing to provide proof of a life insurance policy.

On December 9, 2010, a hearing was held on the Petition for Contempt.[3] The hearing was bifurcated because Wife was seeking criminal contempt on fourteen counts and civil contempt on two counts. In the criminal contempt hearing, Wife testified as to Husband's contemptuous acts and omissions including that he had not paid the property taxes on their residence, he had not paid pendente lite support, and he sold the yacht slip without her consent. She also introduced financial evidence through bank records to establish that he had violated the MDA by making ten withdrawals against the equity line of credit for a total of $123,000 and that he had the financial ability to pay the financial obligations he failed or refused to pay in violation of the MDA. Husband did not testify in the criminal proceeding, asserting his Fifth Amendment right against self-incrimination. The hearing on Wife's

---

[3]Some issues regarding the condition of the marital residence were resolved at an October 29, 2010 hearing. By order entered December 9, 2010, Husband was ordered to vacate the marital residence and restore it to an appropriate condition for showing to prospective buyers. The court also ordered Husband to pay Wife her share of a $19,000 fee he had received for renting the marital residence to a television production company, which filmed a reality television show at the marital residence.

petition for civil contempt commenced immediately following the conclusion of the hearing on criminal contempt. Wife testified as to Husband's failure to pay the health insurance premiums and failure to secure a life insurance policy in violation of the MDA and Husband testified in defense of these allegations, though admitting that he had not paid the health insurance premiums and had not secured the required life insurance policy.

By order entered on January 7, 2011, the trial court found Husband guilty of fourteen counts of criminal contempt. Ten of the counts were for taking ten separate withdrawals against the equity line of credit between July 14, 2009 and November 30, 2009, in amounts of $10,000, $20,000, $20,000, $10,000, $10,000, $10,000, $1,500, $3,000, $4,000, and $37,000 for a total of $123,000. One count was for failing to pay the real estate taxes due on the marital residence for 2009 in the amount of $32,160.36, and another for failing to maintain a real estate listing on the property. The final two counts of criminal contempt were for failing to pay Wife's pendente lite support and selling the yacht slip without the knowledge or consent of Wife. The court found Husband not guilty on three counts of criminal contempt pertaining to payments Husband was to make on the equity line of credit for three separate periods.

The trial court sentenced Husband to ten days in the county jail for each of the fourteen counts of criminal contempt for a total of 140 days of incarceration.[4]

The trial court found Husband guilty of two counts of civil contempt for his failure to pay Wife's health insurance premiums and his failure to provide Wife with proof of his life insurance policy.[5] The trial court awarded Wife her attorney's fees and expenses incurred pursuant to the enforcement provision in the Marital Dissolution Agreement. Husband filed a timely appeal.

### ANALYSIS

Husband raises numerous issues. He contends the trial court erred in finding him in civil contempt because the court did not find that Husband had the ability to comply with the orders he allegedly violated. As for criminal contempt, Husband contends the evidence failed to establish guilt beyond a reasonable doubt due in part to the erroneous admission into

---

[4]The trial court stayed Husband's sentence for criminal contempt pending a timely appeal.

[5]On September 13, 2011, this court granted Wife's motion for consideration of post-judgment facts as to Husband's efforts to purge himself of the civil contempt charges and the trial court's denial of Wife's motion to impose the sentence for civil contempt based upon Husband's actions. The post-judgment facts indicate that Husband paid Wife $1,993.01, which was the amount owed to her for her health insurance premiums, and filed proof with the court that he had obtained a $500,000 life insurance policy.

evidence of the bank records and that the imposition of fourteen consecutive sentences for criminal contempt of ten days each is excessive. Husband also contends the trial court erred in awarding Wife her attorney's fees. We shall address each issue in turn.

## I. CIVIL CONTEMPT

Husband appeals the trial court's findings of two counts of civil contempt for Husband's failure to pay Wife's health insurance premiums and Husband's failure to secure a life insurance policy.

In civil contempt, "the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000) (citing Tenn. Code Ann. § 29-9-104; *Garrett v. Forest Lawn Mem'l Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App.1979)). While this action was on appeal, Wife filed a Motion to Consider Post-Judgment Facts that pertained to the two counts of civil contempt. We granted the motion and find that Husband has cured his contemptuous conduct by paying Wife for the health insurance premiums and by obtaining a life insurance policy as surety for his alimony obligation. Accordingly, the issue of civil contempt is moot. *See Pfister v. Searle*, No. M2000-01921-COA-R3-JV, 2001 WL 329535, at *4 (Tenn. Ct. App. March 28, 2001).

## II. ADMISSIBILITY OF BANK RECORDS

Husband contends the evidence is insufficient to support a conviction of criminal contempt because, *inter alia*, the trial court "committed reversible error" by admitting into evidence bank records to establish the allegedly contemptuous conduct. He contends the bank records were erroneously admitted over his hearsay objection and he takes issue with the fact that during her testimony Wife was permitted to read from and "interpret" the bank records.

"The determination of whether a hearsay statement is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court." *Arias v. Duro Standard Products Co.*, 303 S.W.3d 256, 262 (Tenn. 2010) (citing *State v. Stout*, 45 S.W.3d 689, 697 (Tenn. 2001); *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997)). An appellate court "will not reverse the ruling of the trial court absent a showing that this discretion has been abused." *Id*. (citing *Stout*, 46 S.W.3d at 697).

The trial court ruled that the bank records were admissible as non-testimonial evidence and were admissible under the business records exception relying upon the case of *State v. Asbury*, No. E2008-01641-CCA-R3-CD, 2010 WL 1741365 (Tenn. Crim. App. Apr.

30, 2010). Tennessee Rule of Evidence 803(6) sets forth the hearsay exception for "Records of Regularly Conducted Activity," or as it is more commonly known the "business records exception."[6] The Rule allows for the admission of:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

These business records may be admitted into evidence when properly authenticated and "they otherwise satisfy Rule 803(6) and the other evidence rules." Neil P. Cohen, Sarah Y. Sheppeard, Donald F. Paine, *Tennessee Law of Evidence* § 8.11(10) (6th ed. 2011). Our courts have recognized that Tennessee Rule of Evidence 803(6) provides five criteria that must be satisfied for a document to be admissible under the business records exception:

> 1. The document must be made at or near the time of the event recorded;
> 2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;
> 3. The person providing the information in the document must be under a business duty to record or transmit the information;
> 4. The business involved must have a regular practice of making such documents; and
> 5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

*Arias*, 303 S.W.3d at 263 (quoting *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995)). A business record may be authenticated by either providing the testimony of a qualified person or by using a certification process either in compliance with Tennessee Rule

---

[6]This rule of evidence replaced the Uniform Business Records as Evidence Act, Tennessee Code Annotated § 24-7-111, (repealed 1991). *Rayder v. Grunow*, 1993 WL 95561, at *3 (Tenn. Ct. App. April 2, 1993).

of Evidence 902(11) or a statute authorizing such certification. Cohen et. al., *Tennessee Law of Evidence*, § 8.11[11]. Tennessee Rule of Evidence 902(11) provides that:

> The original or duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by an affidavit of its custodian or other qualified person certifying that the record -
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters;
>
> (B) was kept in the course of regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.[7]

In this action, the bank records were authenticated upon certification by the custodian of records for SunTrust Bank. The certification stated:

> I, Janice Fleugel, do hereby certify under penalties an (sic) perjury that I am the custodian of records for SunTrust Bank and that the attached documents are true and accurate copies of our business records, maintained, and/or prepared by our company.
>
> It is further certified that the records were made at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters. The records were made and kept in the course of regularly conducted business activity and it is a regular practice of our company to make and keep such records.

The above certification complies with Tennessee Rule of Evidence 902(11) and satisfies the criteria of Rule 803(6); therefore, the trial court did not err in admitting the bank records into evidence.[8] Further, we find no error in the way that the bank records were utilized at trial. Having been properly admitted into evidence, Wife, the sole witness during

---

[7]An advisory comment to the 2001 Amendment of Rule 903(11) provides that the custodian need not attend the trial as a witness.

[8]With regard to Father's argument regarding testimonial and non-testimonial portions, our courts have held that when records meet the business records exception to the prohibition on hearsay, that means "it is properly categorized as nontestimonial." *Asbury*, 2010 WL 1741365, at *7 (quoting *State v. Cannon*, 254 S.W.3d 287, 303 (Tenn. 2008)).

the criminal contempt portion of the hearing, merely read from the bank statements. Further, we see no error with the trial court's questioning of Wife regarding the bank statement's contents during her portion of the testimony.

## III.  CRIMINAL CONTEMPT

The willful disobedience of a lawful court order or decree is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3). The maximum sentence for each act of criminal contempt is ten days of confinement in jail and the maximum fine is $50.00. Tenn. Code Ann. § 29–9–103. The person accused of criminal contempt is presumed to be innocent and the prosecution bears the burden of proving guilt beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)). If the defendant is accused of failing to make payments required by order or decree, the prosecution must prove beyond a reasonable doubt that the person charged with contempt had the ability to pay support at the time it was due and that the failure to pay was willful. *Cottingham*, 193 S.W.3d at 538 (citing *Ahern*, 15 S.W.3d at 79).

Once convicted of criminal contempt, the defendant loses the presumption of innocence. *Id*. Thus, on appeal, the issue is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996)).

### A.  Withdrawals Against Equity Line of Credit

The trial court found Husband guilty of ten counts of criminal contempt for ten separate withdrawals against the equity line of credit in violation of the MDA. Husband argues that there was no competent proof to support this finding, insisting the bank records were admitted into evidence in error. We, however, rejected this argument and determined that the bank records are admissible and find that the bank records provided proof beyond a reasonable doubt that Husband made ten withdrawals on the equity line of credit in clear violation of the MDA and the Final Decree of Divorce.[9] Thus, we affirm as to these ten counts of criminal contempt.

---

[9]Husband takes issue with a summary introduced by Wife showing the dates of the withdrawals. However, Tennessee Rule of Evidence 1006 provides that "contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation."

B. <u>Failure to Pay Real Estate Taxes & Failure to Pay Pendente Lite Support</u>

The trial court found Husband guilty of one count of criminal contempt for his failure to pay the 2009 real estate taxes for the marital residence and one count for failure to pay Wife her pendente lite support. Husband argues this was error because the trial court failed to make a finding in its order that he had the ability to pay when these payments were due. We disagree, the evidence in this record is more than sufficient to find Husband had the ability to pay these financial obligations at the time they were due and to hold Husband in criminal contempt for failing to make the required payments.

The MDA required Husband to pay the property taxes on the marital residence, and at the trial, which was held on December 9, 2010, it was established that the 2009 property taxes were still outstanding on the marital residence. The MDA also obligated Husband to pay Wife pendente lite support until June 1, 2009, and Wife testified that he had failed to pay $1,472.77 of pendente lite support that was due during that time.

As for the ability to pay, the bank records introduced into evidence demonstrate that during the time Husband was not paying the 2009 real estate taxes and Wife's pendente lite support as ordered by the Final Decree, he was spending an extraordinary amount on fine dining and travel, expenses which are clearly discernable by an examination of the bank records.[10] A compilation of Husband's expenses prepared by Wife's attorney using the bank records showed that during the period from June 2009 through October 2010, Husband spent over $282,000 on discretionary expenses that did not include groceries, utilities, mortgage payments, and taxes. Additionally, during the relevant periods, Husband was also receiving payments from his business, Cardiac Services Inc., in amounts between $11,000 and $14,000 each month.[11] As the trial court correctly noted in its ruling from the bench, Husband had the financial resources to pay his court ordered obligations but he chose to spend money on other items. Therefore, we affirm the finding of criminal contempt on these two grounds.

C. <u>Failure to Maintain Listing & Sale of the Yacht Slip</u>

The trial court found Husband guilty of criminal contempt for failing to maintain a real estate listing on the marital residence and for selling the parties' yacht slip without

---

[10]For example, in June 2009, Husband spent over $3,000 on fine dining alone.

[11]Husband was awarded the business, Cardiac Services, Inc., in the Final Divorce Decree.

Wife's consent.[12] Both acts were in direct violation of the MDA and Husband does not raise any specific argument as to these charges of criminal contempt. He also failed to cite any relevant authority to challenge either of these issues. Therefore, we find that he has waived these issues. *See Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (failure to make an argument regarding an issue or to cite relevant authority may constitute a waiver of the issue).

## IV. EXCESSIVE SENTENCE

Husband contends the imposition of fourteen ten-day sentences each running consecutive to the others for an effective sentence of 140 days in jail is excessive[13] and requests that we modify and reduce the sentence, citing to *Thigpen v. Thigpen*, 874 S.W.2d 51, 54 (Tenn. Ct. App. 1995), which recognized this court's power to modify excessive sentences for criminal contempt. Husband further argues that his compliance with the trial court's June 1, 2010 order by paying back the funds advanced on the equity line of credit supports a greatly reduced sentence.

The record before us reveals that many of Husband's acts and omissions were clearly in willful violation of orders of the trial court for which he should be sanctioned, because if a party knowingly engages in contemptuous conduct, sanctions are appropriate, including incarceration, if justified by the circumstances. *See* Tenn. Code Ann. § 29-9-102; Tenn. Code Ann. § 29-9-103(b). However, not every contemptuous act, or combination of contemptuous acts, justifies the imposition of a maximum sentence, particularly when consecutive sentencing is in play. Therefore, if we determine that a sentence is excessive, it is incumbent upon this court to reduce or otherwise modify an excessive sentence for contempt. *See Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908 (Tenn. 1964); *Barrowman v. State ex rel. Evans*, 381 S.W.2d 251, 253-54 (Tenn. 1964); *Thompson v. State*, 241 S.W.2d 404 (Tenn. 1951); *Metcalf v. Eastman*, 228 S.W.2d 490 (Tenn. 1950); *see also Hundhausen v. U. S. Marine Fire Ins. Co.*, 52 Tenn. 702 (Tenn. 1871) (wherein the court held that "if the punishment seems to be excessive this Court on appeal has jurisdiction to revise and reduce the sentence.").

Although there are no specific guidelines for sentencing in criminal contempt matters, we find guidance in the Supreme Court's decision in *In re Sneed*, 302 S.W.3d 825 (Tenn. 2010), which addressed the appropriate sentence for an attorney who knowingly disregarded

---

[12]The Final Decree of Divorce authorized Wife to sell the yacht slip, not Husband.

[13]"The finding concerning the imposition of consecutive or concurrent sentences is appealable by either party." Tenn. Code Ann. § 40-35-115(c).

the Court's inherent authority to regulate the legal profession by repeatedly ignoring an order of suspension. As the court explained, criminal contempt should be imposed in appropriate cases "when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." *Id.* at 827 (citing *Robinson*, 377 S.W.2d at 912).

> This Court has previously observed that "criminal contempt is generally regarded as a crime." *Black*, 938 S.W.2d at 402. Because it is punishable by confinement of less than one year, we consider it a misdemeanor for sentencing purposes. *See* Tenn. Code Ann. § 39-11-110 (2006); but *see State v. Wood*, 91 S.W.3d 769, 776 (Tenn. Ct. App. 2002) (holding inapplicable to a criminal contempt conviction arising from a civil matter that portion of the misdemeanor sentencing provision requiring the trial court to fix a percentage of the sentence to serve, and that statutory provision allowing a misdemeanant to earn good time credits). We therefore look to the Tennessee Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. §§ 40-35-101 through --505 (2006), for guidance.
>
> As set forth above, Tennessee Code Annotated section 29-9-103(b) authorizes a sentence of up to ten days for each of Mr. Sneed's contempt convictions. Our intermediate appellate courts have upheld the maximum ten-day sentence upon a single instance of criminal contempt. *See Frye v. Frye*, 80 S.W.3d 15, 17, 19 (Tenn. Ct. App. 2002); *State v. Ramos*, No. M2007-01766-CCA-R3-CD, 2009 WL 890877, at *8 (Tenn. Crim. App. Apr. 2, 2009). Given the seriousness of the contempts in this matter, and the deliberate manner in which they were committed, we have determined that a ten-day sentence on each of Mr. Sneed's fifty contempt convictions is appropriate.

*Id.* at 828.

The determination that a ten-day sentence was appropriate for each contemptuous act in *Sneed* did not end the court's analysis. Once the court determined that multiple convictions for contempt were appropriate, the court set out to determine the manner in which the multiple sentences would be served, meaning "whether the sentences run consecutively or concurrently to one another." *Id.* (citing Tenn. Code Ann. § 40–35–115(a)).

> We may order Mr. Sneed's sentences to run consecutively if we find by a preponderance of the evidence that certain criteria enumerated in Tennessee Code Annotated section 40–35–115(b) are present. Among the relevant criteria supporting consecutive sentencing are: (1) "[t]he defendant is an offender whose record of criminal activity is extensive"; and (2) "[t]he defendant is

-11-

[being] sentenced for criminal contempt." Tenn.Code Ann. § 40-35-115(b)(2), (7). Although statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be "justly deserved in relation to the seriousness of the offense[s]," Tenn.Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, *id.* at § 40–35–103(2). *See also State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999). The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the sentencing court. *State v. Nelson*, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008).

*Id.* at 828-29.

The court then noted that "partial consecutive sentencing" and concurrent sentencing may be appropriate in certain cases. *Id.* at 829 (citing *State v. Cummings*, 868 S.W.2d 661, 664, 667 (Tenn. Crim. App. 1992)). After considering the applicable sentencing considerations, the court determined that Mr. Sneed's fifty ten-day sentences should run partially concurrent and partially consecutive to one another as follows:

Counts 1, 2, and 3 will run concurrent to each other, but consecutive to the groups announced below. Count 4 will run consecutive to Counts 1–3, and to each of the groups announced below. Counts 5–22 will run concurrent to one another, but consecutive to Counts 1–3, Count 4, Counts 24–39, and Counts 40–50. Counts 24–39 will run concurrent to each other, but consecutive to Counts 1–3, Count 4, Counts 5–22, and Counts 40–50. Counts 40–50 will run concurrent to one another, but consecutive to Counts 1–3, Count 4, Counts 5–22, and Counts 24–39. Count 23 will run concurrent to Count 1. The total effective sentence to be served is fifty days.

*Id.* at 830. The result was the imposition of a 150-day sentence for the 50 counts of criminal contempt fashioned in such a way that the contemner, an attorney who was also being disbarred, would serve a total of 50 days in jail of a possible 500-day sentence.

As *Sneed* instructs, we look to the sentencing considerations set forth in Tennessee Code Annotated § 40-35-103 for guidance, wherein the General Assembly states:

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these.

Although the record clearly established Husband's guilt of all fourteen counts of criminal contempt, that fact alone does not justify the imposition of the maximum sentence of ten days for each conviction or that all of the sentences run consecutively to each other for an effective period of confinement of 140 days. To the contrary, there is a presumption in favor of concurrent sentencing as distinguished from consecutive sentencing. *See State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987) (holding that consecutive sentences should not routinely be imposed in criminal cases and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved). Further, the record suggests the trial court did not consider the statutory criteria when determining whether Husband's multiple sentences should be served concurrently or consecutively. *See* Tenn. Code Ann. § 40-35-115(a) ("If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section."). Tennessee Code Annotated § 40-35-115(b) provides that the

court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation; or
>
> (7) The defendant is sentenced for criminal contempt.

The only statutory factor that applies to Husband is that he is sentenced for criminal contempt. While this may justify consecutive sentencing, at least in part, this factor alone does not justify the imposition of the absolute maximum sentence of 140 days. As we noted above, "[a]lthough statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be 'justly deserved in relation to the seriousness of the offense[s],' and 'no greater than that deserved' under the circumstances." *Sneed*, 302 S.W.3d at 828 (internal citations omitted).

Ten of the fourteen counts of criminal contempt were due to Husband's withdrawals against the equity line of credit over five months for a total of $123,000. We find this

-14-

contemptuous conduct serious because it was repetitive, it occurred over a period of months, and the withdrawals were used by Husband for his personal, albeit temporary, benefit – spending it on fine dining, gifts and travel. To aggravate matters, his contemptuous conduct subjected Wife to greater financial risks, because she is jointly liable on the debt. The fact that Husband subsequently repaid the additional debt is remedial; however, it does not cure his contemptuous conduct as it would had he been held in civil contempt.[11]

Another count was for failing to pay Wife's pendente lite support. For reasons similar to that stated above, we find this serious because it further exacerbates Husband's repeated acts and omissions which were detrimental to Wife's financial status, while benefitting his.

The other three counts were for failing to pay the real estate taxes on the marital residence for 2009, failing to maintain a real estate listing on the residence, and selling the yacht slip without Wife's consent. Although these acts cannot be condoned, they are less serious than the other eleven counts.

We do not condone any of Husband's conduct and agree with the trial court that incarceration is appropriate based upon the facts of this case; however, his contemptuous acts do not justify the imposition of the maximum sentence of ten days for each and every count, or consecutive sentencing for all fourteen counts. Having considered the facts of this case, we find the imposition of an effective sentence of 140 days is excessive, especially since only one of the factors in Tennessee Code Annotated § 40-35-115(b) applies.

Having determined the sentence is excessive, we must modify the sentence as was done in *Thigpen v. Thigpen*, 874 S.W.2d 51, 54 (Tenn. Ct. App. 1993). In *Thigpen*, the court found that the evidence supported the ruling that Ms. Thigpen violated the court's order beyond a reasonable doubt; accordingly we affirmed the conviction for criminal contempt. *Id.* After noting that the appellate courts "may modify sentences for contempt on appeal when they appear to be excessive," we went on to hold, "[i]n light of the facts of this case, we have determined that the trial court should have suspended all but one day of Ms. Thigpen's sentence." *Id.* In a more recent case, *Cansler v. Cansler*, No. E2008-01125-COA-R3-CV, 2010 WL 342652 (Tenn. Ct. App. Feb. 1, 2010), we reaffirmed our authority to modify sentences for contempt, citing *Thigpen* and its progeny, and went on to state in pertinent part that Tennessee Code Annotated § 29-9-103 is permissive, not mandatory, and

_____

[11]The petition for contempt was filed on May 26, 2010. During a hearing on the same day the court ordered Husband to repay the funds prior to June 25, 2010. Husband did not repay the funds until July 29, 2010, two months after the petition for criminal contempt was filed and one month past the deadline imposed by the trial court.

that the courts *may* impose a fine or jail sentence, but "the statute does not mandate that a person be fined or sentenced to jail once found in criminal contempt." *Id.* at *10.

Applying the foregoing principles and reasoning, we modify the sentences as follows: The sentences imposed for the ten withdrawals against the line of credit are reduced to four (4) days each, which will run consecutive to each other. The sentences imposed for failing to pay pendente lite support and the 2009 property taxes are reduced to four (4) days each, which will run consecutive to each other and consecutive to the ten counts above. The sentences imposed for the remaining two counts are reduced to one (1) day each, which will run concurrent to each other but consecutive to the other twelve counts. The total effective sentence to be served is forty-nine (49) days. On remand, the trial court shall set the date for Husband to report to jail to serve his sentence.

## V.  ATTORNEY'S FEES

Husband argued that the trial court erred in awarding attorney's fees to Wife. The Final Decree of Divorce provided that the party seeking enforcement of its provisions was entitled to recover his or her attorney's fees and costs. We affirmed the trial court's findings of Husband's fourteen counts of contempt, which were for violating the provisions of the Final Decree; therefore, we affirm the trial court's award of attorney's fees to Wife in the trial court.

Wife also requests an award for attorney's fees and expenses incurred on appeal. Having affirmed the trial court's findings of Husband's multiple counts of contempt for which he should be incarcerated, Wife is entitled to recover her reasonable attorney's fees incurred on appeal. On remand, the trial court shall determine the fees and expenses Wife is entitled to recover.

## IN CONCLUSION

The judgment of the trial court is affirmed in part, modified in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Otto Kent Simpkins, and his surety.

_____
FRANK G. CLEMENT, JR., JUDGE