IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 10, 2023 Session

## LISA ANN WELCH v. WILLIAM MARK WELCH

**Appeal from the Chancery Court for Shelby County**
**No. CH-21-1554-1  Gadson W. Perry, Chancellor**

_____

**No. W2022-00227-COA-R3-CV**

_____

The trial court found multiple counts of criminal contempt stemming from Husband's failure to submit to court-ordered drug and alcohol testing. It fined him $7,100.00 and sentenced him to fifty days in jail. On appeal, Husband contends that the court's order holding him in contempt lacked sufficient factual findings. He also contends that the orders requiring testing were ambiguous and unclear and that there was insufficient proof that his failure to submit to testing was willful. Finally, he challenges the punishment because of its impact on his parenting time. We affirm the finding of criminal contempt in part as modified and vacate the sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part as Modified; Vacated in Part; and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Gary E. Veazey, Stacy L. Greenway, Mitch Moskovitz, and Olivia S. Garber, Memphis, Tennessee, for the appellant, William Mark Welch.

Laura D. Rogers, Memphis, Tennessee, for the appellee, Lisa Ann Welch.

## OPINION

### I.

#### A.

During their divorce, Lisa Ann Welch ("Wife") grew concerned that her husband, William Mark Welch ("Husband"), was abusing alcohol and drugs and doing so around their children. So she petitioned the court for an injunction requiring him to submit to regular drug and alcohol testing. Upon her petition, the trial court issued a judicial fiat requiring Husband to appear in court ten days later. The fiat also ordered Husband to submit to hair follicle and urine drug testing and PEth[1] alcohol testing within three hours of his attorney's receipt of the order.

Husband opposed Wife's petition. He took the hair and urine drug tests only the day before the scheduled hearing. He did not submit to a PEth test until the trial court again ordered him to do so as the hearing began.

At the hearing, Husband admitted drinking, but he disputed that his alcohol consumption was excessive. Because none of the test results were yet available, the court drew a negative inference from Husband's choice not to take the PEth test at the same time as the other tests. So it ordered him to take a PEth test every three weeks to monitor his alcohol use. And it enjoined him from consuming alcohol in his home when the couple's children were present and any time he was with the children outside of the home.

When Husband's initial test results revealed excessive alcohol and unprescribed opioid use, the court ordered him to submit to monthly hair and urine drug screens in addition to the regular PEth tests. And it ordered him to take Soberlink alcohol tests. Husband would take the test by blowing into a breathalyzer in front of his cell phone camera to verify his identity. The Soberlink tests were to be taken randomly, three times daily between 9:00 a.m. and 9:00 p.m. The court also required him to take a Soberlink test immediately before any in-person contact with his two minor children.

After Husband moved out of the marital home, a subsequent order modified his Soberlink testing times. Under this order, the three daily tests would take place at 9:00 a.m., 3:00 p.m., and 9:00 p.m. And Husband had to have a negative Soberlink test before picking up the minor children for parenting time. Wife was named the temporary primary residential parent. Husband was granted unsupervised parenting time with his younger child from 10:00 a.m. to 2:00 p.m. every other Saturday so long as his blood alcohol concentration ("BAC") was zero. But he could have unrestricted contact with his older child while they were at work together, and they could have dinner together if Husband's 3:00 p.m. Soberlink BAC results were zero. The older child could spend weekends with Husband at the parties' farm "with [Husband's] test period extending in the evenings until midnight, if [Husband's] Soberlink BAC results remain[ed] .07 or lower."

---

[1] A PEth test detects alcohol biomarkers in the blood and can show whether the test-taker drank heavily in the past three weeks. Miles Mason Sr., *Alcoholism & Family Law: Step-by-Step Guide to Warning Signs, Testing and Monitoring*, 58 TENN. B.J. 20, 25 (July/August 2022).

B.

Husband failed to comply fully with the court-ordered testing requirements, so Wife filed a series of petitions for criminal contempt. Because her third, fourth, and fifth petitions dealt with the same orders and the same course of conduct, the court consolidated them for hearing. Collectively, these petitions alleged 192 counts of criminal contempt committed between May 1, 2021, and October 31, 2021.[2] Husband did not respond to any of the petitions.

Wife alleged that Husband willfully and knowingly violated multiple orders regarding PEth tests, hair and urine drug screens, and Soberlink tests. Husband had failed to take six PEth tests and took three PEth tests late. He missed six hair or urine drug screens and took two late. After the order requiring daily Soberlink tests at random times, there were 22 days on which Husband failed to take at least three tests. After the court modified the Soberlink order to require tests at specified times, Husband missed 106 tests and took 23 tests late.

In addition to the missed tests, Wife alleged that Husband willfully and knowingly violated orders regarding contact with the children. She claimed that Husband had moved the older child into his home. After that, Husband tested positive for alcohol on three dates. He failed to continue testing until midnight on each of those dates. Next, she alleged Husband had unscheduled contact with the younger child without first taking a Soberlink test. Finally, Husband once had the older child take a Soberlink test for him before attempting to make contact with the younger child.

Over two days of hearings on the petitions for criminal contempt, the court heard testimony from Wife and, on behalf of Husband, Dr. John Ciocca and George Hough. Although called to testify by Wife, Husband invoked his Fifth Amendment privilege against compelled self-incrimination.

Wife submitted business records from both Soberlink and the drug and alcohol testing facilities. The Soberlink records showed that Husband had submitted to hundreds of tests at the required times. The drug and alcohol records showed that Husband had submitted to the ordered PEth, hair, and urine screenings on several dates. But some months he submitted to only one or two of those required drug tests, and some months he did not submit to any drug tests.

Based on the Soberlink records, Wife also testified about Husband's alleged violations relating to the children. A Soberlink report revealed a picture of their older child

[2] By the time of the hearing, Wife had filed a sixth and seventh petition for contempt.

3

taking a test on one occasion. And, after a child moved in with Husband, he had three positive tests for alcohol. She also testified that Husband once went to a ball game to spend time with the younger child without having taken a Soberlink test.

Husband's proof began with Dr. Ciocca, who testified as an expert in psychology. Dr. Ciocca had been retained shortly before the hearing "to do an intervention with [Husband] regarding his alcohol use," which led Husband to pursue a substance abuse evaluation with an addictionologist. Earlier in the divorce, Dr. Ciocca had conducted family therapy with Husband, Wife, and the children for several months. Based on his experience with the diagnosis and treatment of substance abuse, Dr. Ciocca explained that individuals who use alcohol to excess "can have their judgment impaired so they're unable to make willful, conscious decisions on a regular basis." But he had not investigated Husband's motivation for not taking some of the ordered tests and thus could not testify about Husband's reasoning.

Dr. Ciocca also testified about the possible effects of incarceration if Husband were found in contempt. Asked if he had any concerns with such a punishment, Dr. Ciocca stated that his primary concern was that "incarceration at this point would remove [Husband] from the long-awaited effort to get treatment for … and moderate his drinking."

George Hough, the chief executive officer for the family of companies where Husband worked, testified as the final witness. Husband was a member of the senior management staff and owned minority interests in all the companies. Mr. Hough described Husband's importance to revenue generation and customer relationships. Husband accounted for 63% of revenue over the previous two years. And he was responsible for dealing with the companies' largest suppliers and customers. Husband maintained a busy schedule, traveling out of town two or three times per month. According to Mr. Hough, Husband was "always working" and "always on the cell [phone], available for customers and employees," even when travelling or on vacation.

Mr. Hough was also concerned at the prospect of Husband being incarcerated. In particular, he worried that Husband's incarceration would breach loan covenants, causing the banks to call the companies' loans. That, in turn, could cause the companies to shut down, risking "a couple of hundred" lost jobs.

At the close of proof, the court found Husband in contempt but asked the parties to submit a summary of missed or late tests on which they agreed and memoranda on the appropriate punishment. Ultimately, the parties agreed that Husband had failed to take 125 Soberlink tests. But Husband claimed that 89 of those failures were due to ambiguity in the court's orders regarding 9:00 p.m. tests. They also agreed that Husband had failed to take 12 PEth, hair, and urine tests. And Husband was late in taking 28 Soberlink tests and five PEth, hair, and urine tests.

4

The court found Husband in criminal contempt for his failure to take the 125 Soberlink tests and the 12 PEth, hair, and urine tests.[3] Treating the failures as separate counts, it fined Husband $50.00 for each missed test. The court also found Husband in criminal contempt for the five additional counts relating to testing as it impacted Husband's children. For each of these five counts, it fined Husband $50.00 and sentenced him to ten days in jail. It suspended all but 30 days of the sentence subject to Husband's future compliance with court orders.

The court directed that Husband serve his jail sentence over fifteen consecutive weekends. Husband would not have in-person parenting time with his younger child until the sentence was complete, but he would be allowed phone and video calls during this time provided he submitted a Soberlink test showing zero BAC before contact.

## II.

Husband raises nine overlapping issues on appeal, which we restate as four issues. First, Husband claims that the trial court's factual findings and legal conclusions are insufficient. Second, Husband asserts that the testing orders were not clear and unambiguous. Third, Husband argues the criminal contempt findings were not supported by sufficient evidence. Fourth, Husband challenges the punishment imposed by court.[4] Finally, both parties request attorney's fees on appeal.

### A.

Husband complains generally that the trial court did not make sufficient findings of fact or conclusions of law. But he also complains specifically that the court failed to "make findings of fact and law related to [his] ability to comply with the orders at the time of the violations." And the court "failed to make findings of fact and law related to sentencing considerations."

Sufficient factual findings "include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)

---

[3] The court did not hold Husband in criminal contempt for late tests. And Wife agreed not to pursue 17 counts for which Husband disputed adequate notice.

[4] In his reply brief, Husband raises an issue questioning whether the written order requiring Soberlink testing was entered before the time period covered by Wife's petitions for criminal contempt. Because this issue was not raised in his appellant brief, we decline to address this issue. *See Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) (recognizing a reply brief "is not a vehicle for raising new issues"); *see also Reliant Bank v. Bush*, 631 S.W.3d 1, 5 n.4 (Tenn. Ct. App. 2021).

(quoting 9C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3d ed. 2005)). Where insufficient, the appellate court may remand to the trial court "with directions to issue sufficient findings and conclusions," or the appellate court may "conduct[] a de novo review of the record to determine where the preponderance of the evidence lies." *Lovlace*, 418 S.W.3d at 36; *see Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012) (noting that "when faced with a trial court's failure to make specific findings, the appellate courts may 'soldier on' when the case involves a clear legal issue, or when the court's decision is 'readily ascertainable.'") (citations omitted).

Here, the factual findings are sufficient on the issue of Husband's ability to comply with the court's orders at the time of the violations. For each count of criminal contempt, the court found that "Husband willfully and knowingly violated the Orders of the Court." Willfulness is a factual finding. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008). Husband's chief complaint is that the court did not include subsidiary findings, such as finding that his "phone and the Soberlink device were working" at the time testing was required. Although such findings might have been helpful, they were not necessary to reveal the steps the court took to reach its ultimate factual determination. We are also mindful that, in response to questions from the court, counsel ruled out equipment issues as a reason for Husband not taking the tests.[5] So it is understandable that the court would not make a specific or separate finding about the condition of the equipment used for testing. *See Lovlace*, 418 S.W.3d at 35 (recognizing that "[c]ourts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts").

When it came to the sanction, the court did fail to cite the statutory sentencing considerations or make specific reference to whether the sentences should run consecutively or concurrently to one another. So we agree that the factual findings and legal conclusions are deficient in that respect. We address the consequences of that deficiency below.

B.

---

[5] After the close of proof, the court asked Husband's counsel if there was some impediment or something that prevented him from taking the tests:

> The Court: . . . I thought maybe I was going to hear from [Husband], he tried, his phone fell out the window or something, like I – but tell me if there's some sort of impediment.

> Husband's Counsel: You're not going to hear that his phone, and I know you're only saying that as a suggestion, you're not going to hear that his phone fell out of the window or what.

6

A contempt finding stemming from the violation of a court order has "four essential elements." *Konvalinka*, 249 S.W.3d at 354 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011). The order allegedly violated must be lawful. *Konvalinka*, 249 S.W.3d at 354. The order must also be clear and unambiguous. *Id.* The individual charged "must have actually disobeyed . . . the order." *Id.* at 355. And the violation must be willful. *Id.*

Husband concedes that he violated lawful orders. But he argues that the orders, taken together, were confusing and ambiguous. In so doing, he emphasizes that "[t]he timing of the various hearings, status conferences, and orders related to the Soberlink testing and the drug and alcohol testing is very important." There were delays between the court's rulings in open court and entry of the corresponding orders, sometimes stretching to a month. According to Husband, the oral rulings and written orders "had many variations on what the requirements were for Soberlink testing." First, the court verbally instructed him to take three Soberlink tests randomly throughout the day between 9:00 a.m. and 9:00 p.m. Then, the court verbally ordered him to take the tests at 9:00 a.m., 3:00 p.m., and 9:00 p.m. But shortly after he was verbally ordered to take the tests at specific times, the order specifying random testing was entered.

Husband also argues that the Soberlink testing requirements while in the presence of his minor children were ambiguous and unclear. His argument is founded, at least in part, on alleged discrepancies between oral rulings and the court's order. According to Husband, he "was repetitively given verbal orders that were then followed by written orders stating something completely different." But he also asserts that alcohol testing requirements in one of the orders were contradictory. Among other matters, the order at issue named Wife temporary primary residential parent. It specified that the older child could "spend weekends with [Husband] at the farm with [Husband's] test period extending in the evenings until midnight, if [Husband's] Soberlink BAC results remain .07 or lower to ensure [he] is alert to the point where he can be responsible." In the next paragraph, the order allowed Husband to have dinner with the child if his "Soberlink BAC test result at the 3:00 p.m. test time [was] negative for alcohol." Husband complains "[i]n one breath the [t]rial [c]ourt rules that [he] can be around his oldest minor child as long as his BAC is .07 or below, and then in the next breath rules that [he] must have a BAC of 0.0 to have dinner with the same child."

Orders are vague or ambiguous when they are susceptible to more than one reasonable interpretation. *Id.* at 356. "Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review." *Id.*

7

Husband's arguments that the court's written orders varied from its oral pronouncements are unavailing. The question is whether the written orders are unclear or ambiguous. This is because "a trial court speaks through its written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting *Anil Constr. Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014)). Unless the transcript of the court's pronouncements is incorporated by reference in the written order, the oral pronouncements do not represent the court's decision. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001) (recognizing that "the court speaks through its order, not through the transcript"). Here, except for two paragraphs in one order, Husband has not directed us to any unclear or ambiguous language in the court's written orders.

As for the one written order Husband does fault, the language should be construed "using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Konvalinka*, 249 S.W.3d at 356. Applying that standard, we agree that the two paragraphs are inartfully drafted. But we do not find the language unclear or ambiguous. The language must be interpreted in context. The order named Wife the temporary primary residential parent. Its first paragraph addressed times when the older child might spend weekends with Husband at the family farm. During those weekends, Husband could consume alcohol, but only if his BAC remained below a certain level throughout the evening and continued testing until midnight. The second paragraph addressed requisite conditions for parenting time when the child was not spending the weekend at the farm. In those circumstances, Husband could not consume alcohol before picking the child up for dinner.

C.

The subject of criminal contempt proceedings "is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe v. Bd. of Prof'l Resp.*, 104 S.W.3d 465, 474 (Tenn. 2003). But once held in criminal contempt, a person loses his presumption of innocence and bears the burden of overcoming a presumption of guilt. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, we must determine whether any trier of fact could have found the essential elements of the criminal contempt beyond a reasonable doubt, considering the evidence in the light most favorable to the petitioner. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006). We reverse findings of criminal contempt only "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." TENN. R. APP. P. 13(e).

Husband first contends that the evidence was insufficient to support the court's finding that his failure to submit to testing was willful. He faults Wife for not definitively ruling out reasons why he may have been unable to test. Wife produced evidence showing

8

that Husband was able to comply with the testing requirements on many occasions and at each of the three specified times. But Husband suggests that either the Soberlink device or his cell phone sometimes may not have been working or may not have been with him. Wife's evidence showed that Husband would take or skip tests at various times. Some days he would miss one or two tests; some days he did not test at all. And then he would resume the court-ordered testing. The evidence is more than sufficient to support the court's finding of willfulness.

Husband next contends that the evidence did not sufficiently support the five counts of criminal contempt regarding his interaction with his minor children. Three of those counts involve Husband testing positive for alcohol on three separate days when his older child was living with him. On Thursday, August 5, 2021, Husband's BAC was .007 at 9:00 a.m. On Friday, August 13, his BAC was .012 at 9:20 a.m. and .027 at 3:00 p.m. And on Saturday, August 21, Husband's BAC was .029 at 9:48 a.m. At the time, the court had entered an order prohibiting him from "any in-person contact with the children . . . if he tests positive for alcohol on a Soberlink test."

As Husband notes, the court would later modify that prohibition. It did so by the order of August 25, 2021, which is the same order Husband claims was ambiguous. That order authorized Husband to consume alcohol on the weekends provided his BAC was .07 or lower. Although the order was dated August 25, 2021, it was entered nunc pro tunc to June 16, 2021. So, despite prior orders prohibiting Husband from testing positive for alcohol when having in-person contact with the child, that prohibition was lifted on weekends as of June 16, 2021.

Wife argues that Husband violated that order in different ways. Among other things, she faults Husband for not submitting to additional testing until midnight on the two weekend days he tested positive for alcohol. That may be so. But our task is to determine whether Husband's positive alcohol tests violated a court order. For two of these counts, it did not.

Another count involved Husband initiating in-person contact with his younger child without first taking a Soberlink test. Husband was required to "submit to a Soberlink test immediately prior to having any in-person contact with the minor children." Husband contends that Wife failed to prove he had the ability to comply with the Soberlink testing requirement. Considering the evidence in the light most favorable to Wife, we find it sufficient to support the court's finding beyond a reasonable doubt. The proof showed that Husband had the ability to take the test; he demonstrated that ability over and over.

9

For the final count, the court found Husband in criminal contempt for having his older child take a Soberlink test on his behalf. Again, Husband contends that Wife failed to prove he had the ability to comply with the testing requirement, an argument we have already rejected. But he also argues that there was no proof that his conduct violated the court order. He observes that, after the older child took the test, Wife thwarted Husband's effort to pick up his younger child. In Husband's view, this was "[a]t best . . . attempted criminal contempt."

We find the evidence sufficient to support the finding of criminal contempt beyond a reasonable doubt. Willful disobedience of any court order "entails an intentional violation of a known duty . . . ." *State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012) (citing *In re Sneed*, 302 S.W.3d 825, 826 n. 1 (Tenn. 2010)). By court order, Husband had a duty to "submit to a Soberlink test immediately prior to having any in-person contact with the minor children." The order does not specify the nature of the contact other than specifying that it should be "in-person." Husband had the personal duty to take the Soberlink test himself whether or not Wife allowed him to pick up the minor child.

## D.

Under Tennessee Code Annotated § 29-9-103, a trial court may impose a fine of up to $50.00 and imprisonment of up to ten days for most contempts of court. Tenn. Code Ann. § 29-9-103(b) (2012). Husband's challenge to his punishment focuses on the jail sentence. The court sentenced Husband to ten days for each of the five child-related counts of criminal contempt. We have determined that there was insufficient evidence to support the finding of contempt beyond a reasonable doubt on two of those counts. So we focus our review on the sentence for the remaining three counts. We review the appropriateness of a sentence under an abuse of discretion standard, with a presumption of reasonableness afforded to within-range sentences. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

As noted above, Husband faults the trial court for not making sufficient findings of fact and conclusions of law with respect to sentencing considerations. Determining the appropriate sentence is guided by principles set forth in the Tennessee Criminal Sentencing Reform Act of 1989. *In re Sneed*, 302 S.W3d at 828; *Simpkins v. Simpkins*, 374 S.W.3d 413, 422 (Tenn. Ct. App. 2012). Courts first should look to the sentencing considerations set forth in Tennessee Code Annotated § 40-35-103. *Simpkins*, 374 S.W.3d at 423. Where, as here, the party has been found in criminal contempt and sentenced on multiple counts, the court next "must determine whether the sentences run consecutively or concurrently to one another." *In re Sneed*, 302 S.W.3d at 828; *see also Simpkins*, 374 S.W.3d at 422-23. Sentences may run consecutively if the court finds by a preponderance of the evidence that "certain criteria enumerated in Tennessee Code Annotated section 40-35-115(b) are present." *In re Sneed*, 302 S.W.3d at 828. But concurrent sentencing is favored. *See Simpkins*, 374 S.W.3d at 424 (citing *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987)).

Here, the court did not reference any of the statutory factors in imposing a sentence or in determining that the sentence should run consecutively. Although sentencing is reviewed under an abuse of discretion standard, "[d]iscretionary decisions must take the applicable law . . . into account." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We could examine the applicable factors based on the record, especially given that credibility determinations are unnecessary. But, because we have determined that the evidence was insufficient on two of the five counts for which Husband was sentenced and the trial court suspended a significant portion of the original sentence, we vacate the sentence of imprisonment. And we remand for the imposition of a new sentence in light of the statutory factors and the counts that have been affirmed.

## III.

We affirm the finding of criminal contempt on 140 of the 142 counts found by the trial court. We modify the fine imposed to $7,000. The sentence is vacated, and the case is remanded for sentencing and such further proceedings as are necessary. Husband's and Wife's requests for attorney's fees on appeal are denied.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE