IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2014 Session

## MARIA BETH REYNOLDS v. WILLIAM REYNOLDS

**Appeal from the Circuit Court for Davidson County**
**No. 12D843      Phillip R. Robinson, Judge**

_____

**No. M2013-01912-COA-R3-CV - Filed December 12, 2014**

_____

Wife filed a criminal contempt petition against Husband alleging seven violations of the order of protection she obtained against him. The trial court found Husband guilty of six of the seven counts of criminal contempt and, after considering each count of contempt individually, sentenced him to a total of 28 days in jail to be served consecutively. Husband challenges five of the six findings of criminal contempt and the sentence. Husband also challenges the exclusion of his witness based on her violation of Tennessee Rule of Evidence 615. We have determined the trial court did not abuse its discretion in excluding Husband's witness for violating Rule 615. We have also determined the evidence supports the finding that Husband violated the order of protection on each of the five counts he challenges and that the sentence imposed is appropriate. Therefore, we affirm the trial court in all aspects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Trudy L. Bloodworth and Robert Thomas Vaughn, Nashville, Tennessee, for the appellant, William Christopher Reynolds.

Allison Elizabeth Cooley and David A. Kozlowski, Nashville, Tennessee, for the appellee, Maria Beth Reynolds.

## OPINION

Maria Beth Reynolds ("Wife") and William Christopher Reynolds ("Husband") were married in 2009. During the pendency of their divorce, Wife was granted an order of protection on March 21, 2012, that was extended to September 28, 2013, which directed Husband to stay away from and neither directly nor indirectly contact Wife.

On February 8, 2013, Wife filed a petition for criminal contempt for violation of the order of protection. In an amended petition, filed on May 17, 2013, Wife alleged that Husband violated the order of protection on seven different occasions, of which the following six counts are at issue in this appeal:

Count I: On or about March 30, 2012, Husband emailed Wife;

Count II: On or about April 11, 2012, Husband emailed Wife;

Count III: On or about April 17, 2012, Wife observed Husband near the entrance of her apartment building. Husband blocked Wife's car with his car and attempted to have a conversation with Wife;

Count IV: On or about April 17, 2012, Husband called Wife from a blocked number and texted Wife "all of my future plans are with you [Wife]" and that he wants to speak with Wife;

Count V: On or about April 18, 2012, Husband emailed Wife;
. . . .

Count VII: On or about April 26, 2012, Husband emailed Wife.

The hearing was held on May 23, 2013, at which time Wife testified and presented documentation of the emails from Husband; also testifying were Officer William J. Caluette, and Brandon Wayne Boenstein, a resident of Wife's apartment complex. Husband did not testify.[1] Husband had planned to present the testimony of witness Debra Scott, Husband's mother; however, her testimony was excluded by the trial court for reasons identified below.

With respect to Counts I, II, V, and VII ("the emails"), Wife testified that she received four emails from Husband's known email address in violation of the order of protection. Wife testified she was familiar with his email address because it was the same email address he had used throughout the marriage. Copies of the emails submitted into evidence indicated the emails were sent to her email address from the email address Wife identified to be the email address of Husband.[2]

---

[1]Husband's counsel informed the trial court at the hearing that Husband would not testify due to the fact that criminal charges were pending.

[2]Taking into consideration the parties' privacy, we use fictitious email addresses.

Wife testified that she knew the password to Husband's email account because the couple shared their account information with one another, and that she occasionally accessed his email account. After their separation, Husband did not change his password, and Wife admitted that she continued to access his email account for her own safety. Specifically, she testified that she reviewed his account for "diary entries"[3] to determine Husband's "mental state," and if he was in town or threatening her. Wife admitted that with access to Husband's email account, she had the ability to send an *unsent* email, i.e., a "diary entry," from Husband's account to herself which would give the appearance that Husband sent the email to Wife. Moreover, Wife admitted she did forward "really scary" *unsent* emails from Husband's account to her mother's email. However, Wife insisted that she did not send the four emails at issue from her Husband's account to her account.

_____

[3]The "diary entries" consisted of Husband composing an email and then sending it from his email address, CR@. . . .com, to the same email address, CR@. . . .com; the email was then time stamped with a specific date and time. Then, the emails were sent with an indication that they were "forwarded" from Husband's email address to Wife's email address. An example of the "diary entry" format is as follows:

Subject: Fw: Maria
From: Chris Reynolds (CR@. . . .com)
To: MBR@. . . .com;
Date: Wednesday, April 4, 2012 3:20 PM

_____

From: CR@. . . .com <CR@. . . .com>;
To: <CR@. . . .com>;
Subject: Maria
Sent: Fri, Mar 30, 2012 12:01:09 AM

Maria are you happy? Is that what you wanted? I'm not, and this is not what i [sic] wanted
. . . .

Above the line indicates when the email was forwarded and, thus, sent from Husband's email address to Wife's email address. Below the line is what appeared in the body of the email received by Wife which demonstrates the "diary method" utilized by Husband. The information indicates Husband composed and then sent the email to himself prior to forwarding the email to Wife's email address.

Three of the four emails reflect that the date Husband sent the email to his account was prior to delivery into Wife's email account; however, the April 11, 2012 email, appears to indicate that Wife received the email the day before Husband sent it to himself. Wife testified she received the email on April 10th, but could not explain the discrepancy. The court noted that Wife was not qualified as an expert in computers, and Husband did not offer an expert or any explanation for the discrepancy.

In Count III[4], Wife alleged on April 17, 2012, Husband was at her apartment building, blocked her car with his car, and attempted to have a conversation with her. Wife testified that Husband yelled at her and when she screamed for help he drove off. The testimony of Brandon Wayne Borenstein, a resident of the same apartment complex as Wife, corroborated the testimony of Wife. Wife testified she then called law enforcement to report Husband's violation of the order of protection. Officer William Caluette was the responding officer; the allegations in Count IV arose while he was making the report.

In Count IV, Wife alleged that Husband telephoned her from a blocked number on April 17, 2012. At the time Wife received the phone call, she was reporting the events in Count III to Officer Caluette. Wife testified that after she answered the call from the blocked number she recognized Husband's voice as the caller. Officer Caluette testified that he did not know the identity of the caller, nor did he speak with the caller, but he heard a male voice on the phone and the male making statements to the effect of, "I want to be with you, why won't you talk to me?" Wife told the officer that it was Husband, and Officer Caluette testified that he found Wife credible as the situation was consistent with what she told him had happened.

Prior to the beginning of the hearing, the trial court ordered the witnesses to be sequestered, and the court explained what was expected of the sequestered witnesses. The court also informed the witnesses they would be held in contempt and incarcerated if they were seen speaking to each other or anyone from inside the courtroom, or using their cell phones or tablets. The court noted, "We've had people texting information out of the courtroom, back and forth, we're not going to put up with that. So we're giving you fair warning." During the hearing, Wife's attorney brought to the trial court's attention a possible violation of the court's sequestration order. A legal aid representative testified that she observed Husband's witness, Debra Scott, speaking to an officer who was sworn in as a hostile witness and someone from inside the court room, who was later identified as a family friend of Ms. Scott, Cynthia Fontana. The legal aid further testified that she observed one of the ladies, either Ms. Scott or Ms. Fontana, pointing to certain things in a notebook. The court questioned Ms. Fontana who stated that Ms. Scott handed her a notebook and asked her to hold it while she used the restroom. When asked by the court, Ms. Scott admitted to violating the court's order when she spoke to and accepted a notebook from someone inside the courtroom. After the trial court questioned all of the individuals, the court found its sequestration instructions were clear, and that Ms. Scott violated those instructions. As a

_____

[4]Husband does not appeal the trial court's finding of contempt in Count III; however, the events are discussed to give a complete account of the incidents that took place and the testimony heard by the trial court. Further, the events surrounding Count III are relevant insomuch as the trial court considered them in its sentencing decision which is challenged by Husband.

result, the court disqualified Ms. Scott and excluded her testimony.

At the conclusion of the hearing, the trial court found Husband willfully violated the court's order of protection in six of the seven allegations and, thus, guilty of six counts of criminal contempt; the court imposed a total sentence of 28 consecutive days in jail. The trial court further found Wife to be a credible witness and that her testimony was unrebutted.

Husband filed a motion for new trial and/or reduction of sentence; the trial court denied Husband's motion. Husband timely appealed; he concedes one finding of criminal contempt, but challenges the other five and the sentence imposed.

**ANALYSIS**

Husband presents this court with the following issues: (1) whether the evidence was insufficient to conclude that Husband was guilty beyond a reasonable doubt concerning violations of the order of protection on Counts I, II, IV, V, and VII; (2) whether the trial court erred by not applying enhancing and/or mitigating factors to Husband's sentence and sentencing him to consecutive sentencing; and (3) whether the trial court erred when it disqualified Husband's witness from testifying during the May 23, 2012 hearing. We will discuss each in turn.

**I. CONTEMPT**

The willful disobedience of a lawful court order or decree is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3). The maximum sentence for each act of criminal contempt is ten days of confinement in jail and the maximum fine is $50.00. Tenn. Code Ann. § 29-9-103. The person accused of criminal contempt is presumed to be innocent and the prosecution bears the burden of proving guilt beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)). To convict a person of criminal contempt of a court order, four essential elements must be established:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008) (internal citations omitted).

Once convicted of criminal contempt, the defendant loses the presumption of innocence and bears the burden of overcoming the presumption of guilt. *See Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Thus, on appeal, the issue is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538 (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996)).

### A. SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the convicting evidence is raised as an issue on appeal, this court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt. *Black*, 938 S.W.2d at 399 (citing Tenn. R.App. P. 13(e)). We do not reweigh the proof, and the defendant has the burden of illustrating to this court why the evidence is insufficient to support the verdict. *Id.* We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.* (citing *State ex rel. Anderson v. Daugherty*, 191 S.W. 974, 974 (Tenn.1917); *State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App.1994)).

### 1. THE EMAILS: COUNTS I, II, V, AND VII

Husband contends the evidence concerning the emails is insufficient, as a matter of law, for the trier of fact to find Husband was guilty beyond a reasonable doubt. Specifically, Husband asserts Wife's testimony creates reasonable doubt, and she failed to show Husband "actually" sent the emails. Husband solely relies upon Wife's testimony that she "could have" sent the emails to herself to show the evidence was insufficient.

Wife testified she received the emails from Husband's known email address, and the face of the emails reflect they were sent from Husband's known email address to Wife's email address. Although Wife admitted to sending emails from Husband's account to her mother and herself in the past, she was adamant in her testimony that she did not send the emails at issue, and the trial court found Wife to be a credible witness. In its determination of Wife's credibility, the trial court's order reads:

> In determining the weight of the emails in question, the Court acknowledges
> that the credibility of [Wife] is paramount. Based on the testimony of [Wife],
> that she had access to [Husband's] email account and had forwarded emails in

the past to her mother, but that she did not forward these specific emails to herself, and based on her testimony surrounding the events on April 17, 2012, which were corroborated by the testimony of Mr. Bornstein and Officer Caillouette [sic], the Court finds [Wife] to be a credible witness and that her testimony was unrebutted[.]

Because a trial court's findings of fact are often dependent on the credibility of witnesses, we give great weight to the trial court's determination that Wife is a credible witness. *See Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Moreover, Husband offered no other evidence to show he did not send the emails at issue, and as the trial court correctly noted, "if one is interested in challenging the validity of this, I would suggest that it may have been appropriate to bring someone who knows more than the rest of us in the courtroom about emails if they're wanting to put some other spin on this." Based upon the face of the emails submitted into evidence and Wife's testimony, the trial court found Husband willfully sent the emails to Wife. The trial court found that the emails constituted indirect contact with Wife in violation of the order of protection, and, thus, Husband guilty of criminal contempt for each email sent.

Husband bears the burden of illustrating to this court why the evidence is insufficient to support the trial court's finding that he willfully sent the emails to Wife in violation of the order of protection, and he failed to carry this burden. Further, we have determined the evidence fully supports the trial court's factual finding that Husband willfully sent the emails to Wife. We further conclude those factual findings are sufficient to support the determination that there was proof beyond a reasonable doubt that Husband violated the order of protection when on four separate occasions he indirectly contacted Wife through email. Therefore, we affirm the finding of criminal contempt in Counts I, II, V, and VII.

2. THE TELEPHONE CALL: COUNT IV

Husband contends the evidence concerning the telephone call, Count IV, is insufficient as a matter of law for the trier of fact to find Husband was guilty beyond a reasonable doubt. Specifically, Husband asserts Wife failed to show Husband "actually" placed the telephone call. Husband contends there is no evidence showing he placed the call because Wife testified the call was from a blocked number, and she submitted no other evidence, e.g., Husband's telephone call log or records, to show he placed the call. Further, Husband contends Officer Caluette testified that he did not speak to the caller, and he did not know Husband's voice, and, thus, could not verify it was Husband calling. Husband asserts the testimony of Wife and Officer Caluette is insufficient to show beyond a reasonable doubt he placed the telephone call.

-7-

The trial court relied upon Wife's testimony and Officer Caluette's corroborating testimony in finding Husband willfully called Wife from the blocked number. Wife testified that she is familiar with Husband's voice, and after she answered the blocked call she recognized his voice as the caller. Firsthand voice identification is sufficient to support a finding by the trier of fact that the matter is what its proponent claims. *See* Tenn. R. Evid. 901(a). The "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." *State v. Hinton*, 42 S.W.3d 113, 127 (Tenn. Crim. App. 2000). Further, and contrary to Husband's assertion, the trial court did not make a finding that Officer Caluette identified Husband's voice; rather, the court found that Officer Caluette's testimony corroborated the testimony of Wife except for identifying Husband as the caller. Officer Caluette testified that he could not identify Husband as the caller; however, he testified that he heard a *male voice* on the phone and the caller made statements to the effect of "I want to be with you, why won't you talk to me?" Wife told the officer Husband was the caller, and Officer Caluette testified that he found Wife credible as the situation was consistent with what she had informed him was going on.

In light of the trial court's implicit credibility determination of Wife, and Wife's unrebutted detailed testimony as to Husband's violation of the order of protection, the evidence supports the trial court's factual finding that Husband willfully called Wife from the blocked number. We further conclude those factual findings are sufficient to support the determination that there was proof beyond a reasonable doubt that Husband violated the order of protection when he indirectly contacted Wife when he called. Therefore, we affirm the finding of criminal contempt in Count IV. We will now turn to the sentence imposed for the findings of criminal contempt.

## II. SENTENCING

The standard we apply in reviewing sentencing decisions, including the determination to impose consecutive sentences, is abuse of discretion, accompanied by a presumption of reasonableness. *See State v. Bise*, 380 S.W.3d 682 (Tenn. 2012); *State v. Pollard*, 423 S.W.3d 851 (Tenn. 2013). Where the trial court states in the record the reasons it has imposed a particular sentence, we are able to afford the sentencing decision the presumption of reasonableness; where it fails to do so, we may conduct a more detailed review of the record and uphold the decision "so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Bise*, 380 S.W.3d at 706; *see also Pollard*, 432 S.W.3d at 862. "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008) (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). "In that event, 'our review is simply de novo.'" *Id.* (citing *State v. Pierce*, 138 S.W.3d 820, 827

(Tenn. 2004)). Husband contends our review of the sentencing decision should be de novo asserting the trial court failed to sentence him in accordance with the Tennessee Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-101 through § 40-35-505 ("Sentencing Act"). We find the trial court properly followed the Sentencing Act and articulated in the record the reasons it imposed each particular sentence; accordingly, our review of the sentence imposed is the abuse of discretion standard, accompanied by a presumption of reasonableness. *Bise*, 380 S.W.3d at 706; *see also Pollard*, 432 S.W.3d at 862.

Husband asserts the trial court failed to sentence him in accordance with the Sentencing Act when it failed to apply all mitigating factors in its sentencing consideration. Husband further contends the sentence is excessive, and that the trial court could have used alternatives such as probation, anger management classes, or community service, instead of incarceration.

## A. MITIGATING/ENHANCEMENT FACTORS

The trial court sentenced Husband to a total of twenty-eight days for the six counts of contempt, with the sentence to be served consecutively. Husband contends the sentence is excessive in light of three mitigating factors he identified at the sentencing hearing. The three factors he relied on read as follows:

> (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury; . . .
> (8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense . . . ; and
> (13) Any other factor consistent with the purposes of this chapter.

Tenn. Code Ann. § 40-35-113(1), (8), and (13).

In its bench ruling, the trial court addressed the sentence imposed for each separate finding of contempt and stated the reasons for its determination.

For Count I, which was the first email sent to Wife, the trial court sentenced Husband to two days in jail. The court's reasoning for the sentence reads as follows:

> The Court's reasoning has to do with the circumstance, *actually, that [Husband's counsel] pointed out, in part*. The court notes that it was not a personal contact with the [Wife] where he could have done physical harm to her, although the Court notes that one of the problems in domestic violence is

the emotional impact and the fear that is generated by the constant stalking or harassing. The Court does not mean to indicate that emotional upset and fear is any less when you receive an email than it is when you see someone out in the front yard. But the ability of the [Husband] to actually do physical harm is reduced.

(Emphasis added).

For Count II, which was the second email sent to Wife, the court's reasoning was consistent with that in Count I, however, the trial court enhanced the sentence for Count II to three days finding because "[the email] constituted a *second offense days later*. . . ." (Emphasis added).

As for Count III, Husband contends the eight-day sentence was excessive. In rendering this sentence, the trial court stated that it considered the direct versus indirect nature of Husband's contact and explained: "Because he was there in person, the Court feels he deserves an enhanced punishment and the Court sentences him to eight days for that violation. The court's reasoning for the sentence imposed in Count III was based upon Husband being at the apartment complex in person."

As for Count IV, the telephone call, the trial court once again noted the contact was indirect, but because it was Husband's fourth violation of the order, it found an enhancement was necessary, and sentenced him five days in jail.

The trial court's reasoning was the same for Count V and Count VII, both of which involved emails to Wife, and sentenced Husband to five days for each count.

Contrary to Husband's contentions that the trial court failed to consider the mitigating factors he presented in its determination of the sentence, we have determined the trial court did, indeed, give appropriate consideration to the appropriate mitigation and enhancement factors. As Tenn Code. Ann. § 40-35-210(c) directs, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." *Carter*, 254 S.W.3d at 344. Moreover, the statutory scheme only requires a determination on the record of "what enhancement or mitigating factors were considered [by the trial court], if any, as well as the reasons for the sentence . . . ." Tenn. Code Ann. § 40-35-210(f); *see also State v. Boshears*, No. CCA01C01-9412CR00402, 1995 WL 676402, at *4 (Tenn. Crim. App. Nov. 15, 1995). Thus, the statutory scheme does not require the sentencing court to specifically address each and every claimed mitigating factor. *Boshears*, 1995 WL 676402, at *4.

Here, the trial court stated its decision to impose a reduced sentence for the emails and telephone call, as compared to Husband's encounter with Wife at her apartment complex, was based "in part" on the lack of direct contact pointed out by Husband's counsel. Further, the trial court stated its reason in enhancing a sentence was based upon either the direct nature of the contact as for Count III or the repeated contemptuous actions arising under Counts II, IV, V, and VII.

The trial court's imposition of a reduced sentence along with its articulated reasons clearly reveal the fact that the trial court considered the relevant mitigating and enhancement factors in its sentencing determination in accordance with the Sentencing Act. We will now address whether the sentence imposed is excessive.

B. SENTENCE IMPOSED

The record before us reveals that Husband's acts were clearly in willful violation of the order of the protection for which he should be sanctioned, because if a party knowingly engages in contemptuous conduct, sanctions are appropriate, including incarceration, if justified by the circumstances. *See* Tenn. Code Ann. § 29-9-102; Tenn. Code Ann. § 29-9-103(b). "However, not every contemptuous act, or combination of contemptuous acts, justifies the imposition of a maximum sentence, particularly when consecutive sentencing is in play." *Simpkins v. Simpkins*, 374 S.W.3d 413, 422 (Tenn. Ct. App. 2012). Therefore, if we determine that a sentence is excessive, it is incumbent upon this court to reduce or otherwise modify an excessive sentence for contempt. *Id.* (citations omitted). Although there are no specific guidelines for sentencing one found to be in criminal contempt, the Supreme Court's decision in *In re Sneed*, 302 S.W.3d 825 (Tenn. 2010) provides guidance. *Id.*

The sentencing guidelines for misdemeanor crimes have been applied when appropriate to sentence for criminal contempt. *Sneed*, 302 S.W.3d at 828. Moreover, the court may order sentences for criminal contempt to run consecutively. *See* Tenn. Code Ann. § 40-35-115(b)(7). Accordingly, we look to the Sentencing Act[5] for guidance. *Sneed*, 302 S.W.3d at 828.

Tennessee Code Annotated § 40-35-103 provides the following sentencing considerations:

_____

[5]However, the portions of the criminal code that require the court to set a percentage of the sentence that must be served, Tenn. Code Ann. § 40-35-302(d), and that allows a misdemeanant to earn good conduct credits while serving time in a local jail, Tenn. Code Ann. § 41-2-111(b), do not apply to a defendant convicted of criminal contempt arising out of a civil matter. *Sneed*, 302 S.W.3d at 828 (citing *State v. Wood*, 91 S.W.3d 769, 776 (Tenn. Ct. App. 2002)).

(1) Sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these.

Here, in making it's sentencing determination, the trial court, on the record, considered the extent of the willful and deliberate defiance of the court's order, whether the contact was direct or indirect, the seriousness of the consequences of the contemptuous behavior, the necessity of effectively terminating Husband's defiance as required by public interest, and the importance of deterring such acts in the future. The trial court did not hand down a maximum sentence for each act of contemptuous behavior; instead, as discussed earlier, it reduced the sentences based on the extent of contact, and increased sentences based upon direct contact and repeated violations. Given the trial court's reasoning and thorough consideration of the nature and extent of each violation, we have determined the sentence imposed for each criminal contempt conviction is appropriate. Further, given Husband's

repeated and deliberate violations of the order of protection, we find the trial court did not abuse its discretion in ordering each of the sentences to be served in jail.

Having determined the sentences imposed were appropriate for each contemptuous act, our analysis now turns to the trial court's determination that the multiple sentences be served consecutively. *See Simpkins*, 374 S.W.3d at 422-23; *Sneed*, 302 S.W.3d at 828.

### C. Concurrent/Consecutive Sentencing

"If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section." Tenn. Code Ann. § 40-35-115(a). "The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the sentencing court." *Sneed*, 302 S.W.3d at 829 (citing *State v. Nelson*, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008)).

The court is to determine whether the sentences are to run consecutively or concurrently based on criteria set forth in Tennessee Code Annotated § 40-35-115 and the court may order sentences to run consecutively if any one of the factors provided in subsection (b) is found. *See State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013) (citing *State v. Mickens*, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003)). One of the factors is that "[t]he defendant is sentenced for criminal contempt." Tenn. Code Ann. § 40-35-115(b)(7).

In ordering Husband's twenty-eight day sentence to be served consecutively, the trial court stated from the bench:

[T]he Court specifically finds by a preponderance of the evidence that, and actually beyond a reasonable doubt in this case, that the Defendant is being sentenced for criminal contempt. That's exactly why we're here. So the Court finds that it can run consecutive sentences. But, more importantly, let me explain the very basis of the Court's concern here. The purpose of an Order of Protection is to direct people to leave people alone. They represent some threat of harm or danger to the person. That's exactly what has occurred in this case. In this particular case, the Court finds that on six of the seven allegations against him, he has knowingly, intentionally violated the Court's Order and it doesn't seem to matter what the Order is to him. So the fact of the matter is if, frankly, if he'd done this one time with one email, this Court's position may be somewhat different. . . . Because many of these people, even though they're dangerous, they're emotionally upset in divorce cases because of that and they do represent a danger to themselves or other people. So the Court is

comfortable with running the sentences consecutive in this situation.

Each of the offenses of which Husband stands convicted is criminal contempt; accordingly, as the trial court found, he automatically qualified for consecutive sentencing as to all counts. *See* Tenn. Code Ann. § 40-35-115(b)(7). However, the trial court's reasoning did not stop with the finding of that factor alone. The trial court further discussed the purpose of an order of protection, and how Husband did not seem to care that an order was in place evidenced by the repeated contemptuous behavior of Husband. Accordingly, the trial court found it could order consecutive sentences based on these factual findings and the findings of criminal contempt.

The maximum sentence under Tenn. Code Ann. § 29-9-103 for six counts of criminal contempt would be sixty days served consecutively in jail. Keeping in mind the limitation of the sentencing statutes that the total punishment must be no greater than that deserved under the circumstances, *Sneed*, 302 S.W.3d at 829, we are persuaded that the trial court did not abuse its discretion in ordering the twenty-eight day sentence to be served consecutively. Further, we commend the learned trial judge for his thorough and thoughtful consideration of the appropriate sentence.

### III. DISQUALIFICATION OF WITNESS

Husband contends the trial court erred when it excluded the testimony of his witness, Debra Scott, due to a violation of Tennessee Rule of Evidence 615 ("the Rule").[6] He asserts the inquiry by the trial court into the alleged conduct was insufficient to disqualify her as a witness, and that she should have been allowed to testify because her testimony was material to the case.

---

[6]Tennessee Rules of Evidence 615 reads:

At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615.

-14-

The trial court has broad discretion in determining whether the Rule has been violated. *Robinson v. State of Tenn.*, 340 F.Supp. 82, 85 (1972). Moreover, the Rule "does not set forth any particular sanctions that should be imposed for its violation." *State v. Jordan*, 325 S.W.3d 1, 41 (Tenn. 2010). "Accordingly, trial courts have significant discretion when deciding how best to deal with its violation." *Id.* (citing *State v. Upchurch*, 620 S.W.2d 540, 543 (Tenn. Crim. App. 1981) ("[W]hether to allow or not allow the testimony of a witness who has violated the rule is within the discretion of the trial court."); *Jones v. State*, 548 S.W.2d 329, 332 (Tenn. Crim. App. 1976) (recognizing that "it remains a matter of the Trial Judge's discretion as to whether the witness who violated the rule will be permitted to testify")). "This discretion should be exercised in light of both the policies at issue as well as the particular facts and circumstances of the case." *Id.* Accordingly, we review for an abuse of discretion. *Id.* "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Id.* at 39 (citing *Konvalinka*, 249 S.W.3d at 358).

Prior to the beginning of the trial, the trial court explained the Rule and what was expected of the sequestered witnesses. The court also notified the witnesses that they would be held in contempt and incarcerated if they were seen speaking to each other or anyone from inside the courtroom, or using their cell phones or tablets. When the possible violation of the Rule was brought to the trial court's attention, it questioned all individuals involved. Ms. Scott admitted to violating the court's order when she spoke to and accepted a notebook from someone inside the courtroom. The court found its sequestration instructions were clear, that Ms. Scott violated those instructions, and as a result tainted herself as a witness. The court determined the proper sanction was to disqualify Ms. Scott as a witness and excluded her testimony. Subsequent to this ruling, there was no objection made by Husband's counsel, and no offer of proof as to Ms. Scott's anticipated testimony. Husband did, however, raise the issue in his motion for new trial and asserted the exclusion of the witness was "highly prejudicial" as Ms. Scott was the only witness for the defense. The trial court denied Husband's request for a new trial based upon this ground, and affirmed its finding that Ms. Scott violated the Rule and the sanction it imposed. The trial court further found Ms. Scott's testimony was to give background information of the parties' relationship and that she had no personal knowledge of the violations set forth in the contempt petition.

The possible sanctions available to a trial judge for a violation of the Rule are numerous. *Jordan*, 325 S.W.3d at 41. A frequently-used sanction, and the one utilized here, is exclusion of the witness. Although this remedy is well within the court's discretion, our Supreme Court has cautioned its application in criminal prosecutions as it risks conflict with a defendant's fundamental constitutional right to call witnesses and present a defense, and

because of the availability of alternative sanctions. *Id*. at 42 (citations omitted). The Supreme Court then quoted a Texas Court of Appeals case that articulated the following two part test to determine a trial court's error in disqualifying a witness:

> Where the "particular and extraordinary circumstances" show neither the defendant nor his counsel have consented, procured, connived or have knowledge of a witness or potential witness who is in violation of the sequestration rule, and the testimony of the witness is crucial to the defense, it is an abuse of discretion exercised by the trial court to disqualify the witness.

*Id*. at 44 (quoting *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989)). The Supreme Court cautioned that automatic exclusion of a defendant's witness for violation of the Rule, with no consideration given to the impact of the proffered testimony or other relevant circumstances, risks error. *Id.* at 45.

In applying the above stated rule to the trial record before us, several matters must be considered. First, although neither Husband nor his counsel participated in Ms. Scott's failure to observe the Rule, there is no offer of proof as to what Ms. Scott's testimony would have been. Moreover, based upon representations made to the trial court in the hearing on the motion for a new trial, the court was given the opportunity to consider the potential importance of Ms. Scott's testimony and the court made the express finding that "Ms. Scott's testimony was to only give background information of [Husband] and [Wife's] relationship and that Ms. Scott had no personal knowledge of the violations set forth in [Wife's] contempt petition."

Based upon the above, we find no error with the trial court's decision to exclude Ms. Scott. Further, had excluding her testimony been error, it would be harmless for she had no personal knowledge of the events at issue. Accordingly, we find the trial court did not abuse its discretion in excluding the testimony of Ms. Scott.

### IV. ATTORNEY'S FEES ON APPEAL

Wife seeks to recover the attorneys' fees she incurred in this appeal based on her interpretation of Tenn. Code Ann. § 36-3-617(a)(1). Husband insists she is not entitled to recover her "attorney's fees" in this appeal because the statute only applies when a court "issues or extends an order of protection" and this is not such an action.

Tenn. Code Ann. § 36-3-617(a)(1) reads in pertinent part:

Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing on the petition, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

In her brief, Wife states "[a]lthough the statute speaks directly to an award of attorney's fees in cases of an appeal from an order of protection, the statute can be interpreted to support an award of attorney's fees incurred in the enforcement of an order of contempt arising out of an order of protection." We are in agreement with Wife that the statute only speaks directly to an award of attorney's fees in appeals from the *issuance or extension* of an order of protection; thus, this statute provides no basis for an award of attorney's fees in this proceeding. We also note the authority Wife relies on in her brief, *Wiser v. Wiser*, No. M2010-02222-COA-R3-CV, 2011 WL 4729870 (Tenn. Ct. App. Oct. 7, 2011), does not support her argument, for the issue in that appeal pertained to the extension of the order of protection for five years. *Id*. at *4.

Finding no authority upon which Wife may be entitled to recover her attorney's fees in this appeal, her request is respectfully denied.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, William Christopher Reynolds.

_____
FRANK G. CLEMENT, JR., JUDGE