# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 02, 2014 Session

## KELLY LYNN ALLBERT v. JASON EDWARD FIGUEIREDO

**Appeal from the Chancery Court for Montgomery County**
**No. 99110045     Ross H. Hicks, Judge**

_____

## No. M2014-00095-COA-R3-CV - Filed December 19, 2014

_____

The trial court found Mother to be in contempt for the willful failure to pay child support and awarded Father past due and retroactive child support. The trial court also denied Mother's petition to modify custody and awarded Father his attorney's fees. We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ARNOLD B.GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Hillary T. Monroe, Clarksville, Tennessee, for the appellant, Kelly Lynn Allbert.
Francis King, Nashville, Tennessee, for the appellee, Jason Figueiredo.

## MEMORANDUM OPINION[1]

Kelly Lynn Allbert ("Mother") and Jason Edward Figueiredo ("Father") were married in 1996; one child was born of the marriage in 1999. The parties divorced in February 2000. By agreement, Mother and Father had joint legal custody of their minor child; Mother maintained physical custody; and Father had reasonable and liberal visitation. The final decree of divorce was entered by the Chancery Court of Montgomery County on February

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

15, 2000, but no parenting plan was entered with the divorce decree. In June 2009, Mother filed a petition to modify the parenting agreement. In her petition, she asserted that no parenting plan had been entered by the court and that a substantial change in circumstance had occurred necessitating a parenting plan and modifying the parties' 2000 agreement. She prayed the trial court to enter her proposed parenting plan as the permanent parenting plan and for child support pursuant to the child support guidelines. Following contentious proceedings between the parties, in August 2010 the trial court entered a parenting plan, found Mother guilty of four counts of contempt for refusing to permit Father to exercise visitation with the parties' child, and sentenced her to 40 days in the Montgomery County jail. The trial court suspended the sentence pending Mother's compliance with the parenting plan entered on August 10, 2010. In its order, the trial court stated, "[i]f the Mother refuses visitation at any time for any reason and/or states to the Father that he must go find the child, she's not there, then the Mother must serve the 40 day jail sentence and the Parenting Plan will be reversed with the Father being the primary residential parent." The trial court named Mother primary residential parent and granted Father 109 days parenting time. The trial court also awarded Father a judgment in the amount of $5,331.06 for expenses for trying to visit the child and for attorney's fees. The trial court set Father's child support obligation at $986.00 per month, to be paid directly to Mother.

Following numerous acrimonious proceedings, by order entered June 18, 2012, the trial court found Mother in contempt for refusing to provide Father with information regarding the parties' child and sentenced her to 10 days in jail. The trial court suspended the sentence pending Mother's compliance with the court's modified parenting plan. The trial court "reverse[d]" the parenting plan, naming Father primary residential parent and awarding Mother 102 days of alternate parenting time. Because Father had relocated to Florida, the trial court ordered that Father would be responsible for reasonable transportation costs for visitation. The trial court's order provided that Father would receive summer visitation beginning June 5, 2012, and that "the reversal of the Parenting Plan shall occur one week prior to the Minor Child beginning school for the fall 2012 school year for visitation purposes. The Mother's first monthly visitation shall occur after the school year begins." In its order, the trial court awarded Father a judgment in the amount of $7,000.00 for expenses and attorney's fees. The trial court set Mother's child support obligation at $175.00 per month payable by direct deposit to Father's bank account; ordered both parties to maintain reasonable health insurance; ordered both parties to obtain life insurance and provide proof thereof; and ordered that the parties would share equally medical expenses not paid by insurance.

After contentious proceedings concerning payment of the judgment awarded to Father, in December 2012 Mother filed a petition to modify the parenting plan to name her primary residential parent and to modify child support accordingly. Father answered and counter-petitioned for criminal contempt, alleging that Mother had failed to pay child support, failed to provide proof of life insurance, and failed to reimburse Father for one-half of the child's

uncovered medical/dental expenses. In June 2013, Mother filed a motion to amend and to correct the June 2012 child support order. In her petition, she asserted that her counsel had notified Father's counsel in September 2012 that the child support worksheet was erroneous and that she provided proof of other qualifying children in November 2012. Mother asserted that her income was approximately $2978.00 per month and prayed the trial court to reduce her child support obligation to $84.00 per month and her share of the child's uncovered medical expenses to 16 percent. In the child support worksheet attached to her petition, Mother claimed that four qualifying minor children resided in her home.

Following a final hearing in October 2013, the trial court made an oral ruling and took the matter under advisement. The trial court entered judgment in the matter on December 9, 2013. In its order, the trial court determined Mother had physical custody of her grandchildren but did not demonstrate legal guardianship/custody for the purposes of child support. It found that she had the ability to pay and willfully disobeyed the court's child support order. (The amount of the order was voluntarily lowered by agreement of the parties to $120.00 per month.) The court found that Mother had made only two payments, one in the amount of $40.00 and one in the amount of $35.00, from June 2012 through August 2013. The trial court found that the child support calculation failed to include Mother's two other biological children and adjusted her child support obligation accordingly. The trial court found Mother in contempt for failure to pay a dental bill in the amount of $42.50 and for failure to return the child following a Mother's Day visit in 2013. The court revoked suspension of Mother's previous sentence for contempt; sentenced Mother to an additional 10 days; and ordered the second sentence to be served concurrently with the first and on weekends so as not to jeopardize Mother's employment. The trial court awarded Father child support in the amount of $2,948.00, including past due arrearage in the amount of $820.00 and retroactive support in the amount of $2,128.00. It denied Mother's petition to modify custody and awarded Father attorney's fees in the amount of $15,000.00.

On December 19, 2013, Mother filed a motion to set aside the order on the ground that the trial court had set December 15, 2013, as a deadline for the guardian ad litem ("GAL") to file her proposal and that the court entered its ruling on December 9, after receiving Father's proposed findings of facts but before the GAL submitted her findings. She asserted that the trial court's findings with respect to Father's cooperation in the matter and the child's well-being were in error. She further asserted that her testimony was undisputed with respect to her status as legal guardian of the grandchildren living in her home and that Father's counsel was provided with a copy of the court order granting her custody.

On January 6, 2014, Mother filed a notice of appeal of the trial court's order of December 9, 2013. Father filed a response and objection to Mother's motion to set aside and to strike portions of her motion on January 8, 2014. The trial court heard the matter on January 10, 2014, and denied Mother's motion to set aside the December order and granted Father's motion to strike. On April 10, 2014, the trial court entered judgment in the matter based upon its December 9, 2013, order and awarded Father a judgment for child support in

the amount of $2,948.00, including past due child support in the amount of $820.00 from June through December 2012 and $2,128.00 for January 2013 through February 2014 at the monthly rate of $152.00. The trial court denied Mother's May 2013 motion for installment payments and awarded Father a judgment in the amount of $15,000.00 for reasonable attorney's fees. Oral argument was heard by the Western Section of this Court sitting in Nashville on December 2, 2014.

## Issues Presented

Mother raises the following issues for our review, as stated by Mother:
1) Did the trial court err in declining to include and designate the two grandchildren of whom Mrs. Allbert has physical and legal custody in the child support worksheet as in-home children?

2) Did the trial court err in finding that the Mother's child support obligation began in June 2012, while she was technically still the primary parent for purposes of the parenting plan?

3) Did the trial court err in finding Mrs. Allbert in contempt for willful failure to pay child support?

4) Did the trial court err in finding Mr. Allbert in contempt for her failure to return the minor child to Florida after her Mother's Day, 2013 visitation?

5) Did the trial court err in finding Mrs. Allbert in contempt for her failure to reimburse Mr. Figueiredo for an uncovered medical expense, specifically a dental bill?

## Standard of Review

Appellate review of the factual findings of a trial court sitting without a jury is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *e.g., Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). We review the trial court's conclusions of law *de novo*, however, with no presumption of correctness. *E.g., Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012).

## Child Support

We turn first to Mother's assertion that the trial court erred by failing to give her credit for two grandchildren living in her home when setting Mother's child support obligation.

In her brief, Mother asserts that her testimony that she had legal and physical custody of her two minor grandchildren when the trial court set her child support obligation was unrebutted. She further asserts that the record includes a November 2011 order of the Montgomery County Juvenile Court giving her and her husband guardianship of their granddaughter, L.T.T., and that opposing counsel was provided with a copy of that order.

Father, on the other hand, asserts that the juvenile court's order was not offered into evidence but was attached as exhibit 18 to an answer filed by Mother in December 2011 in response to a November 2011 petition filed by Father. He contends that those pleadings were not entered into evidence at the October 2013 hearing that resulted in the order appealed by Mother. Father does not dispute the authenticity of the juvenile court order, but asserts that Mother failed "to offer documentary proof at trial of her contention that she had legal custody and guardianship" of her grandchildren.

Upon review of the record transmitted to this Court, we find that it includes a November 9, 2011, judgment of the Juvenile Court for Montgomery County awarding Mother and her husband custody of their granddaughter. We note, however, that the juvenile court's order is attached as exhibit 18 to Mother's November 2011 pleading styled, "PETITION FOR CRIMINAL CONTEMPT, TO REVERSE PARENTING PLAN TERMS AND INVOKE SUSPENDED SENTENCE." It does not appear that Mother introduced the juvenile court's order into evidence at any of the many hearings held before the trial court.

The child support guidelines provide that a parent shall be permitted a credit against the parent's gross income for other children for whom the parent is legally responsible if the parent is actually supporting the child. Tenn. Comp. R. & Regs. 1240-02-04-.04(5)(a). In order for the child to be considered for credit, the parent "must present documentary evidence of the parent-child relationship to the tribunal[,] which may include a court order." *Id.* at .04(5)(c). In order to receive credit against gross income for qualified children living in the parent's home, the parent must establish a legal duty of support and that the child resides with the parent at least fifty percent of the time. *Id*. at .04(5)(e). "The available credit against gross income for either parent's qualified 'in-home' children is seventy-five percent (75%) of a theoretical support order calculated according to these Guidelines, using the Credit Worksheet, the parent's gross income less any self-employment taxes paid, the total number of qualified other children living in the parent's home, and the Schedule." *Id*. With respect to a petition to modify child support, the inquiry for the court is whether a significant variance exists between the current support order and the obligation established by the child support guidelines. Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S.W.3d 632, 637 (Tenn. 2006). The party petitioning for modification of a child support order carries the burden of proving that modification is warranted. *State ex rel. Laxton v. Bifferstaff*, No. E2009-01707-COA-R3-JV, 2010 WL 75982, at *2 (Tenn. Ct. App. March 5, 2010)(perm. app. denied Aug. 25, 2010) (citation omitted).

In this case, the trial court made extensive, detailed findings of fact in its December 9, 2013, order. These facts include the court's finding that "[w]hile Mother may have

physical possession of two grandchildren as well as her own two in-home biological children, she was unable to demonstrate that she has legal guardianship or custody of these grandchildren for purposes of calculating child support[.]" As noted, Mother attached the juvenile court's order giving her guardianship of one of her grandchildren as one of many exhibits to a petition filed two years prior to entry of the trial court's order. However, Mother failed to introduce the juvenile court's order into evidence at any of the many hearings before the trial court. Mother simply failed to carry her burden of proof on this issue.

We next turn to Mother's assertion that the trial court erred by finding that her child support obligation commenced in June 2012. Mother submits that her child support obligation did not begin until September 2012 "based on the new Parenting Plan's delayed implementation." Mother's argument, as we understand it, is that although the trial court entered its order setting Mother's child support obligation on June 18, 2012, because the trial court ordered that Father would have summer visitation with the child from June until August 2012 as provided by the previous parenting plan, and permitted Mother to have her first scheduled monthly visitation in August, the trial court's order was not effective until September 2012.

The parenting plan attached to the trial court's June 2012 order set Mother's child support obligation at $175.00 per month and provided that "payments shall begin on the date of the new Order." The trial court entered the parenting plan on June 19, 2012, and entered its order in the matter on June 18, 2012. This issue is without merit.

## Contempt

We turn next to whether the trial court erred in holding Mother in contempt for the willful failure to pay child support, for failing to return the minor child to Florida after her 2013 Mother's Day visitation, and for failing to reimburse Father for an uncovered dental bill. Conduct that is punishable as contempt includes "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29–9–102(3). Criminal contempt may be punished by a fine of up to $50 and imprisonment for a period not exceeding ten days. Tenn. Code Ann. § 29–9–103(b).

We begin our discussion of the finding of contempt in this case by noting that Father's contempt petitions were petitions for criminal contempt. Accordingly, although the trial court did not specifically state that its finding of contempt was one of criminal contempt, it is clear from the entirety of the record that the punishment of contempt in this case is for criminal contempt. The primary purpose of punishment for criminal contempt is to "preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012) (quoting *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). The intent of criminal contempt sanctions is to punish past

behavior rather than to force compliance or influence future behavior. *See id.* at 520.

Guilt of criminal contempt must be established by proof beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). We review a trial court's decision of whether to impose criminal contempt sanctions for an abuse of discretion, and we will only reverse its criminal contempt convictions "when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App.2004) (quoting *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App.1993)). After a defendant has been found to be in criminal contempt, she loses the presumption of innocence she had at trial. *Simpkins v. Simpkins*, 374 S.W.3d 413, 420 (Tenn. Ct. App.2012). On appeal, our standard of review is whether, "considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. Ct. App. 2006) (citations omitted). We afford the prosecution "the strongest legitimate view of the evidence and all legitimate inferences which may be drawn from it." *Id.* Questions regarding witness credibility, the weight to be given to the evidence, and factual issues raised by the evidence are resolved by the trier of fact. *Id.*

In this case, Mother does not assert that the trial court erred by finding that she failed to fulfill her child support obligation as ordered by the court. Rather, she contends that her failure to pay child support as ordered was not willful because she did not have the ability to pay support.

In its December 2013 order, the trial court found that, despite Mother's testimony that she did not have the ability to pay child support, Mother also testified that she sold dogs and paid their vet bills instead of paying child support. It further found that Mother failed to pay child support after receiving a tax refund in the amount of $5,000.00, and that she voluntarily assumed expenses for her grandchildren rather than fulfilling her child support obligations. We affirm the trial court's finding of contempt for the failure to pay child support.

Mother similarly asserts that her failure to return the child to Father in May 2013 was not willful but predicated on her belief that Father was deployed and that the child accordingly would be in the care of her stepmother. The trial court stated at the October 2013 hearing of this matter that Mother sought no court approval for her actions, but merely "made assumptions." The court stated, "She just did it. That was clearly a contemptuous action on her part, particularly in view of the [c]ourt's previous orders in this case."

Upon review of the record, we observe that Mother testified at the October 2013 hearing that "it was her belief that [Father] had been deployed" and that she texted Father but received no response. Mother also testified that she believed that there was an investigation pending in Florida and that the child was not permitted to be left with her stepmother. Mother testified that she attempted to file paperwork for emergency custody the day after the child was to return to Father, that her petition was not heard, and that she returned the child several days later after being notified that an *ex parte* order had been entered by the court.

It is undisputed that Mother did not return the child to Father as provided by the

parenting plan. It also is undisputed that Mother took no steps to seek court intervention until after failing to return the child as ordered. Whether Mother's alleged concerns were credible was a matter to be determined by the trial court. We affirm on this issue.

We finally address Mother's assertion that the trial court erred by finding her in contempt for failing to reimburse Father for uncovered dental expenses in the amount of $42.50. Mother again does not dispute that she failed to reimburse Father for this amount, but asserts that such failure was not willful. The question presented by this issue, as we perceive it upon review of the record and the arguments of the parties, is whether Mother was aware of the uncovered dental bill. Father testified at the October 2013 hearing that Mother was sent the dental bill "at least four" times. This is a question of fact requiring an assessment of the credibility of the witnesses. We affirm.

## Holding

The welfare of the child is the primary concern in proceedings involving child custody and visitation. *Lovelace v. Copley*, 418 S.W.3d 1, 38 (Tenn. 2013). We urge Mother and Father to resolve the palpable hostility and animosity between them, and to re-focus their attention on the welfare of their child. In light of the foregoing discussion, we affirm the judgment of the trial court. Costs on appeal are taxed to the Appellant, Kelly Lynn Allbert. Because Appellant is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

ARNOLD B. GOLDIN, JUDGE