IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 22, 2015 Session

**IN RE A.J.**

**Appeal from the Juvenile Court for Williamson County**
**No. 37304      Sharon Guffee, Judge**

_____

**No. M2014-02287-COA-R3-JV- Filed October 22, 2015**
_____

This is the second appeal from a finding of criminal contempt. Appellant and his wife originally filed a petition to have the Appellees' daughter adjudicated dependent and neglected. The trial court entered an order, in which the parties could not contact each other or each other's families. Appellant made contact with Appellees' daughters on multiple occasions via text message and once in person. The Appellees filed a petition for contempt against Appellant, and the trial court found the Appellant guilty of four counts of criminal contempt and sentenced Appellant to the maximum punishment allowed for each contempt conviction with the sentences to run consecutively. On the first appeal, this Court affirmed the convictions of criminal contempt but vacated the sentence and remanded the case to the trial court with instructions to resentence the Appellant and explain its reasons for the sentence it imposed. On remand, the trial court found the Appellant guilty of twenty eight counts of criminal contempt. The trial court imposed twenty-four hour sentences for each count except one, for which the trial court imposed a five-day sentence. Appellant appeals from the convictions, the sentence, and the trial court's denial of a motion to recuse. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER, J., and ARNOLD GOLDIN, J., joined.

Brenda Rhoton Clark, Nashville, Tennessee, for the appellant, R.J.

Michael T. Fort and William P. Holloway, Franklin, Tennessee, for the appellees, D.J. and W. J.

**OPINION**

## I. Background

On October 18, 2011, R.J.[1] ("Appellant") and his wife, S.J., filed a petition in the Juvenile Court of Williamson County to have A.J., the daughter of D.J. and W.J. (together, "Appellees"), declared dependent and neglected. The petition alleged that A.J. constantly engaged in self-destructive behavior, which the Appellees did nothing to prevent, and that the living conditions in the Appellees' home were "intolerable." The petition also requested that the trial court place A.J. in R.J. and S.J.'s custody. On October 21, 2011, the trial court held a preliminary hearing on the matter. In an order dated October 27, 2011, the trial court appointed a Guardian ad Litem for A.J., referred the case to the Department of Children's Services for a report, and ordered that A.J. have no further contact with the Appellant and his family. On December 14, 2011, the trial court entered an agreed order, in which the parties agreed that the matter was "settled." The order adjudicated A.J. dependent and neglected for lack of proper supervision and mandated several requirements for all parties involved, including that a "reciprocal Restraining Order is in effect that [R.J. and S.J.] and [the Appellees], as well as their families, must not have any contact with each other. The minor children of both families are only allowed to have contact during school."

On June 18, 2012, the Appellees filed a petition to hold R.J. in criminal contempt of the December 14, 2011 agreed order. Specifically, the Appellees alleged that the Appellant had violated the "reciprocal restraining order" provision of the order on 183 separate occasions. On October 3, 2012, the Appellees filed a petition to hold S.J. in criminal contempt as well. On November 6, 2012, R.J. and S.J. filed separate answers to the petitions for criminal contempt filed against them. On January 25, 2013, the trial court heard the petitions for contempt, and, in an order dated February 6, 2013, the trial court found both R.J. and S.J. guilty of criminal contempt.[2]

The trial court found the Appellant guilty of four counts of criminal contempt. The first count arose from Appellant having contact with E.J., another of the Appellees' daughters, on May 28, 2012. On that date, E.J. initiated contact with Appellant via text message because she was fighting with her boyfriend. Despite Appellant's awareness of the trial court's no contact order, he responded to E.J.'s text message, and the two had a conversation regarding E.J.'s boyfriend. Although the Appellees' petition for criminal contempt alleged that each individual text message sent by Appellant during this exchange

---

[1] In termination of parental rights cases, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

[2] Because S.J.'s is not a party to this appeal, we will not discuss her involvement in this case in any detail.

constituted separate counts of contempt, the trial court considered the exchange a "continuing event" and found Appellant guilty of one count of criminal contempt arising from the events of May 28, 2012.

The second count of contempt arose from a second text message conversation between Appellant and E.J. on June 1, 2012. Like the first incident, E.J. initiated contact with Appellant via text message. E.J. contacted Appellant because her boyfriend was harming himself, and Appellant responded to offer advice. Like the first count of contempt, the trial court considered this conversation a "continuing event" and found Appellant guilty of one count of criminal contempt arising out of that event.

The third count of contempt arose when Appellant sent a text message to A.J. on June 3, 2012. Appellant sent one message, to which A.J. did not respond. Appellant claimed he sent A.J. the text message accidentally; however, the trial court found Appellant's testimony was not credible and sentenced him for one count of criminal contempt based upon this incident.

The fourth count of contempt arose from Appellant speaking directly with A.J. on June 5, 2012. On that date, Appellant travelled to Nashville to search for A.J. after learning she had run away from home. Appellant located A.J., and they had a conversation in Appellant's car and then in an apartment that belonged to a friend of A.J.. The trial court found that Appellant "intentionally sought out [A.J.], had an extended conversation with her, offered her to stay at his home, if there was nowhere safe for her to go." The trial court found Appellant guilty of one count of criminal contempt for this incident.

The trial court sentenced Appellant to ten days in jail and a fifty dollar fine for each count of criminal contempt. The jail sentences were to run consecutively, for an effective sentence of forty days in jail and a two-hundred dollar fine. Appellant appealed his convictions and sentence to this Court. *See In re Anna L.J.*, No. M2013-00561-COA-R3-JV, 2014 WL 1168914 (Tenn. Ct. App. Mar. 20, 2014) ("*In re Anna I*"). In *In re Anna I*, this Court affirmed Appellant's convictions of criminal contempt. *Id.* at *5. In regard to Appellant's sentence, however, we concluded that

> it is not apparent from the record why the court imposed the maximum sentence for each count of contempt. In the absence of an explanation from the court of why it imposed the maximum sentence for each count and for the sentences to be served consecutively, in our review we cannot afford the sentencing decision a presumption of reasonableness or conclude that the court did not abuse its discretion.

3

*Id.* at \*6.  Rather than modify the Appellant's sentence, we vacated it and remanded the case with instructions for the trial court to "state its reasons for imposing concurrent or consecutive sentences and why the overall length of sentence (the sum of the days sentenced for each count of contempt) was chosen." *Id.*

On July 25, 2014, Appellant filed a motion to recuse Judge Sharon Guffee from the resentencing hearing.  Appellant premised his motion on an alleged *ex parte* conversation that the trial judge had with A.J. and A.J.'s attorney.  On August 8, 2014, the trial court held a hearing on both the motion for recusal and the Appellant's sentence in light of the mandate from this Court.  At the hearing, the trial court denied the Appellant's motion to recuse.  Instead of merely resentencing Appellant, however, the trial court found Appellant guilty of twenty eight counts of criminal contempt.  The trial court found Appellant guilty of: (1) twenty counts of criminal contempt arising from the May 28, 2014 contact with E.J.; (2) six counts of criminal contempt arising from the June 1, 2014 contact with E.J.; (3) one count arising from the June 3, 2014 contact with A.J.; and (4) one count arising from Appellant's in-person contact with A.J. on June 5, 2014.  The trial court sentenced Appellant to twenty four hours in jail for each count arising from the May 28, June 1, and June 3 incidents, with the sentences to "all run concurrently."  The trial court concluded that the sentence for the June 5th incident would run consecutively.  The trial court also fined the Appellant fifty dollars for each incident.  On September 22, 2014, the trial court entered an order denying the Appellant's motion to recuse and imposing the sentence.

## II. Issues

I.    Whether the trial court erred when, on remand, it found Appellant guilty of additional counts of criminal contempt.
II.   Whether double jeopardy prevents the trial court from finding the Appellant guilty of criminal contempt arising from the Appellant's contact with A.J. on June 5, 2011.
III.  Whether the sentence imposed by the trial court was excessive.
IV.   Whether the trial court erred when it denied the Appellant's motion to recuse.

## III. Analysis

### A. Counts of Criminal Contempt

Appellant contends that the trial court erred when it found him guilty of twenty eight counts of criminal contempt.  Specifically, Appellant argues that the trial court exceeded the scope of remand when it found him guilty of twenty eight counts of criminal contempt instead of simply resentencing him.  Appellees argue that the trial court had the authority to

resentence Appellant on more than just the original four counts of criminal contempt because the trial court never exonerated the Appellant of the remaining counts of criminal contempt in the original proceeding.

At the first hearing on the petition for criminal contempt, the trial court initially stated that Appellant was guilty of twenty eight counts of criminal contempt; however, it ultimately concluded that each incident constituted one count of criminal contempt. The four counts of contempt were affirmed by this Court in *In re Anna I.* On appeal, this Court remanded to the trial court with instructions to "state its reasons for imposing concurrent or consecutive sentences and why the overall length of sentence (the sum of the days sentenced for each count of contempt) was chosen." However, at the August 8, 2014 hearing, the trial court not only stated its reasons for sentencing, it also increased the number of counts of criminal contempt from four to twenty eight.

We conclude that the trial court's imposition of additional counts of criminal contempt violates the law of the case doctrine. The "law of the case doctrine" is "a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited." *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). "[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Id.* "Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court…." *Id.* "[B]y remanding a case with limiting instructions when error exists only as to certain issues, the courts maintain the integrity of rulings previously made." *Melton v. Melton*, No. M2003-04120-COA-R10-CV, 2004 WL 63437, at *5 (Tenn. Ct. App. Jan. 13, 2004).

In *In re Anna I*, this Court "affirm[ed] the holding that [Appellant] was in criminal contempt of court, vacate[d] the sentence imposed and remand[ed] the case for resentencing." *In re Anna L.J.*, 2014 WL 1168914 at *11. The instructions to the trial court on remand did not allow the trial court to re-try the question of whether Appellant was in contempt. Rather, we remanded to the trial court only for resentencing on the four counts of criminal contempt that were affirmed. The four counts of criminal contempt became final once *In re Anna I* was decided. We conclude that the trial court exceeded the scope of our remand in holding that the Appellant was guilty of twenty eight counts of criminal contempt. Accordingly, we reverse the finding of twenty eight counts of contempt and reinstate the Appellant's conviction of four counts of criminal contempt.

## B. Double Jeopardy

Appellant also argues that one of his convictions for contempt should be dismissed because it violates his constitutional rights. Specifically, Appellant argues that his conviction for contempt, arising from his in-person contact with A.J. on June 5, 2012, should be dismissed because he has already been found guilty of a crime arising from those events and that double jeopardy prevents him from being convicted of another crime arising from those same events. Appellees argue that this issue is waived because Appellant did not raise this issue in his first appeal to this Court. In the alternative, Appellees argue that constitutional double jeopardy protections do not extend to the Appellant's separate convictions.

"Generally, issues not raised at trial may not be raised for the first time on appeal." *In re Valle*, 31 S.W.3d 566, 571 (Tenn. Ct. App. 2000). Appellant did not raise a double jeopardy argument during the remand hearing. Furthermore, Appellant's convictions for criminal contempt were affirmed in *In re Anna I*. The only issue on remand was the Appellant's sentence. Although the trial court erred in finding Appellant guilty of extra counts of contempt on remand, the trial court's error does not expand the scope of this appeal to allow Appellant to raise new defenses to his convictions or to raise issues not raised earlier at the trial level. Accordingly, this issue is waived.

## C. Sentence

Appellant challenges the trial court's imposition of twenty four hours in jail for each count of contempt arising from the incidents on May 28, June 1, and June 3. Appellant also challenges the trial court's decision to run his five-day sentence arising from the June 5, 2012 incident consecutively. Appellant argues his sentence is excessive, and the trial court abused its discretion by imposing consecutive sentences. Appellees argue that the sentence imposed was within the discretion of the trial court and was not excessive.

"The standard we apply in reviewing sentencing decisions, including the determination to impose consecutive sentences, is abuse of discretion, accompanied by a presumption of reasonableness." *In re Anna L.J.*, 2014 WL 1168914, at *5 (citing *State v. Bise,* 380 S.W.3d 682 (Tenn. 2012)). When sentencing for multiple contempt counts, a court may consider the factors in Tennessee Code Annotated Section 40-35-115(b) to determine whether the sentences should run concurrently or consecutively. *See In re Sneed*, 302 S.W.3d 825, 828 (Tenn. 2010). "However, not every contemptuous act, or combination of contemptuous acts, justifies the imposition of a maximum sentence, particularly when consecutive sentencing is in play." *Simpkins v. Simpkins*, 374 S.W.3d 413, 422 (Tenn. Ct. App. 2012). "[T]here is a presumption in favor of concurrent sentencing as distinguished from consecutive sentencing." *Id.* at 424 (citing *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn.

1987)). The overall length of a sentence must be "justly deserved in relation to the seriousness of the offense[s]." Tenn. Code Ann. § 40-35-102(1). *See also In re Sneed*, 302 S.W.3d at 828. The sentence should also be "no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-103(2). *See also In re Sneed*, 302 S.W.3d at 829.

When reviewing a sentence for contempt, we review whether the sentence for each count of contempt is appropriate, and then determine whether consecutive or concurrent sentencing is appropriate. *See In re Sneed*, 302 S.W.3d at 828. Tennessee Code Annotated Section 29-9-103(b) authorizes a sentence of up to ten days for each count of contempt. Given the nature of the text conversations between Appellant and the Appellees' daughters, we conclude that a twenty-four hour sentence with regard to the first three counts of contempt was appropriate. In regard to the fourth count, the trial court found Appellant's in-person contact with A.J., on June 5, 2011, to be the "most egregious" and "most intentional" of all of the contemptuous acts. We agree with the trial court that Appellant's actions in searching for A.J. in flagrant disregard of the no contact order was more egregious than the other contemptuous actions. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Appellant to five days for this act. We also conclude that the trial court did not abuse its discretion when assessing a fifty dollar fine for each incident.

Having determined that the trial court did not abuse its discretion in its sentencing for each count, we must also determine whether the trial court abused its discretion in imposing consecutive sentences. On remand, the trial court stated that sentences arising from the May 28, June 1, and June 3 incidents "will all run concurrently." Based upon the egregious and intentional nature of Appellant's in-person contact with A.J., the trial court imposed the five-day sentence for this count to run consecutively to the other counts; this resulted in a total effective sentence of six days. In creating a consecutive sentence, the trial court relied on the statutory criteria set out at Tennessee Code Annotated Section 40-35-115(b)(7) that consecutive sentences may be imposed when a defendant is found guilty of contempt.

This Court has previously upheld consecutive sentencing when the only statutory factor present in the case was that the defendant had been sentenced for contempt. *See Simpkins,* 374 S.W.3d at 425-26. From the record, it appears that Appellant and the Appellant's family have been involved with the Appellees' and their family for some time. The trial court's no contact order was put in place to prevent further issues arising between the two families. We understand why Appellant would have responded to the text messages he received from E.J.; however, we must agree with the trial court that Appellant's searching for A.J. was both blatant and egregious. From the totality of the circumstances, we conclude that the sentence imposed, including the five-day consecutive sentence, is "justly deserved" but no greater than the offense warrants. Accordingly, we affirm the trial court's imposition of concurrent sentences of 24 hours in jail for each count of contempt arising from the May

28, June 1, and June 3 incidents. We also affirm the imposition of a consecutive, five-day sentence for the contempt arising from the Appellant's in-person contact with A.J. on June 5 and the imposition of a fifty-dollar fine for each incident. Having affirmed the trial court's imposition of these sentences, we apply them to the four counts of contempt that we are reinstating, resulting in an effective sentence of six days in jail and a $200 fine.

### D. Motion to Recuse

Appellant also contends that the trial judge should have recused herself from the proceedings due to an *ex parte* conversation between the trial judge and A.J. Appellant relies on a statement made by W.J. in a November 7, 2011 interview, which was conducted by a detective of the Williamson County Sheriff's Office, for the proposition that the trial judge conducted an *ex parte* conversation with the Appellees, A.J., and their lawyer. Appellant argues that, at the very least, the meeting gives the appearance of impropriety, and, therefore, the trial judge should have recused herself. Appellees argue that evidence presented at the hearing demonstrates that an *ex parte* meeting did not occur, and the trial judge correctly denied the motion.

We review the trial court's ruling on the motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01.[3] Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" "'The right to a fair trial before an impartial tribunal is a fundamental constitutional right[,]'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)), and it remains "important to preserve the public's confidence in a neutral and impartial judiciary." *Id*. As we have emphasized, "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." *McKenzie v. McKenzie*, No. M2014–00010–COA–T10B–CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014).

---

[3] Prior to the adoption of Tenn. S. Ct. R. 10B, appellate courts reviewed recusal decisions under an abuse of discretion standard. *State v. Hester*, 324 S.W.3d 1, 72–73 (Tenn. 2010); *Bailey v. Blount County Bd. of Educ.*, 303 S.W.3d 216, 239-40 (Tenn. 2010); *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995) ("A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record").

"Generally, an *ex parte* communication requires recusal only where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." ***Runyon v. Runyon***, No. W2013-02651-COA-T10B, 2014 WL 1285729 (Tenn. Ct. App. March 31, 2014) (citing ***Johnson v. Johnson***, No. M2002-00354-COA-R3-CV, 2003 WL 61249, at *4-5 (Tenn. Ct. App. Jan. 9, 2003)). Even when a judge sincerely believes that she can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "'in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" ***Davis v. Liberty Mut. Ins. Co.***, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting ***Alley v. State***, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias, 'since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" ***Shelby County Gov't v. City of Memphis***, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at *4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted). In examining requests for recusals based on bias, it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide. The law on judicial bias is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor."[4] ***Bean***, 280 S.W.3d at 803 (citation omitted).

At the resentencing hearing, Appellant offered a transcript of the November 7, 2011 interview to demonstrate the trial judge's *ex parte* communication. In the interview, W.J. stated that "Bob Plummer said, there's no way she'll be taken out of your home. Deputy Luttrell said, no judge in this state – and actually, she went in and had a private meeting with a judge, our lawyer, and [A.J.]. And she told [A.J.], you won't be removed from your home." Appellant's motion argued that, in this interview, W.J. was stating that the trial judge was the one who told A.J., in the presence of only A.J. and A.J.'s attorney, that A.J. would not be removed from her home. At the hearing, however, W.J. testified that it was not the trial judge who made the statement "you won't be removed from your home," but rather a deputy. W.J. also testified that on the day the supposed *ex parte* communication took place, she recalled that both the Appellant's lawyer and the Appellees' lawyer had a meeting with the trial judge.

During the hearing, Appellant's counsel admitted that she took part in a meeting with Appellees' counsel, A.J., and the trial judge, wherein the trial judge inquired of A.J. whether she felt safe and if she had been abused. Appellant's counsel admitted at the hearing that this

---

[4] The Constitutional provision, Article VI, Section 11 of the Tennessee Constitution, provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested...."

meeting did not constitute an *ex parte* communication. We do not find any evidence in the record that Appellant presented any other proof of an *ex parte* communication. Because the only evidence regarding an *ex parte* communication was specifically refuted by a witness, the trial judge had no recollection of such a meeting, and Appellant's counsel admitted that the meeting, to which that interview referred, was not an *ex parte* communication, there was no abuse of discretion in denying recusal. Accordingly, we affirm the trial court's denial of the motion to recuse.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's finding of twenty eight counts of contempt. We affirm the sentence imposed by the trial court and its denial of the motion to recuse. We remand the case with instructions for the trial court to reinstate the Appellant's original conviction of four counts of criminal contempt and for any further proceedings that may be necessary and are consistent with this opinion. Costs of this appeal are taxed one-half to the Appellant, R.J., and his surety, and one-half to the Appellees, D.J. and W.J., for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE